## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

X.AI LLC, ET AL.,

    *Plaintiffs*,

  v.

ASHLEY ST. CLAIR,

    *Defendant.*

Case No. 7:26-CV-00005-O

## DEFENDANT'S MOTION TO DISMISS

Defendant Ashley St. Clair respectfully moves this Court to dismiss Plaintiffs' First Amended Complaint. The grounds for this motion are set forth in the accompanying memorandum.

July 20, 2026

Respectfully submitted,

_____

Carrie A. Goldberg, *Pro Hac Vice*
Naomi Leeds, *Pro Hac Vice*
Katherine McKay, *Pro Hac Vice*
C.A. Goldberg, PLLC
16 Court Street, 33rd Fl.
Brooklyn, New York 11241
646-666-8908 (phone)

JAY BLASS COHEN
Texas Bar # 24069528
Blass Law, PLLC
4245 N Central Expy, #490
Dallas, TX 75205
(713) 664-4000 (phone)
jay@blasslaw.com

*Attorneys for Defendant Ashley St. Clair*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

|  |  |
|---|---|
| X.AI  LLC, ET AL.,<br><br>                              *Plaintiffs*,<br><br>                  v.<br><br>ASHLEY ST. CLAIR,<br><br>                              *Defendant*. | Case No. 7:26-CV-00005-O |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT'S MOTION DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ......................................................................................................................... 2

STANDARD OF REVIEW ........................................................................................................ 4

ARGUMENT ............................................................................................................................... 5

   I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
      CLAIMS. .......................................................................................................................... 5

      a.  The Complaint Presents No Federal Question. ............................................................ 5

      b.  The Amount-in-Controversy Requirement is not Met and Cannot be Met. .................... 5

          i.   The Amount in Controversy Is Fixed at Filing; It Cannot Accrue Into  Existence
            During the Pendency of the Case. ................................................................. 6

          ii.  A Demand for Attorney's Fees Cannot Supply the Jurisdictional Amount Here ....... 7

      c.   Plaintiffs have no redressable injury-in-fact to confer Article III standing .................... 9

  II.  PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
      UNDER RULE 12(B)(6). ............................................................................................... 12

      a.  Plaintiffs fail to state a claim for breach of contract with xAI ...................................... 13

      b.  Plaintiffs Fail to State a Claim Because Defendant Was Never Bound by Version 21 of
         X's Terms of Service. .................................................................................................... 15

      c.  Plaintiffs fail to adequately allege the forum-selection clauses govern the instant
         dispute. ......................................................................................................................... 16

 III. PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION UNDER RULE
      12(B)(2). ......................................................................................................................... 18

 IV. THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER
      PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS. ............................................. 19

CONCLUSION ........................................................................................................................ 21

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662, 678 (2009)............................................................................................ 5, 16

*Ashley St. Clair v. X.AI Holdings Corp., et al.*,
 No. 1:26-cv-00386 (S.D.N.Y.), *appeal pending*, No. 26-1777 (2d Cir.) .............................. 2, 3

*Atlantic Marine*
 *571 U.S. 49, 52 (2013)* .............................................................................................. 10, 21

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 570 (2007).................................................................................................. 5

*Braspetro Oil Services Co. v. Modec (USA), Inc.*,
 240 F. App'x 612, 616 (5th Cir. 2007) ............................................................................. 17

*Brillhart v. Excess Ins. Co. of Am.*,
 316 U.S. 491, 494 (1942)................................................................................................ 19

*Budget Prepay, Inc. v. AT&T Corp.*,
 605 F.3d 273, 278 (5th Cir. 2010) ..................................................................................... 5

*California v. Texas*,
 593 U.S. 659, 672 (2021)................................................................................................... 5

*Couch v. First Guaranty, Ltd.,*
 578 F. Supp. 331, 332 (N.D. Tex. 1984) ........................................................................... 14

*Epps v. NCNB Tex. Nat'l Bank*,
 838 F.Supp. 296, 301 (1993)........................................................................................... 16

*Grupo Dataflux v. Atlas Global Grp., L.P.*,
 541 U.S. 567, 570 (2004).............................................................................................. 6, 9

*H&D Tire & Auto. Hardware, Inc. v. Pitney Bowes Inc.,*
 227 F.3d 326, 331 (5th Cir. 2000) ..................................................................................... 7

*HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*,
 565 S.W.3d 799, 805 (Tex. App. 2018)............................................................................. 10

*In re Nalle Plastics Family Ltd. Partnership*,
 406 S.W.3d 168, 173 (2013) .............................................................................................. 8

ii

*In re Nationwide Ins. Co. of Am.*,
   494 S.W.3d 708, 712–13 (Tex. 2016) ................................................................... 10

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,
   665 F.3d 671, 678 (5th Cir. 2011) ....................................................................... 20

*J.V. & Sons Trucking, Inc. v. Asset Vision Logistics, LLC*,
   1:20-CV-163-H, 2020 WL 10458645, at *4–5 (N.D. Tex. Dec. 15, 2020) ............ 18

*Kakkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375, 377 (1994) ................................................................................... 4, 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 560-61 ............................................................................................. 9

*Mo. State Life Ins. Co. v. Jones*,
   290 U.S. 199, 202 (1933) ....................................................................................... 7

*Mollan v. Torrance*,
   22 U.S. (9 Wheat.) 537, 539 (1824) ...................................................................... 6

*Namdar v. Fried,*
   340 A.3d 1184, 1207-08 (Del. Ch. 2025) ............................................................ 11

*Noble House, L.L.C. v. Certain Underwriters at Lloyd's London*,
   67 F.4th 243, 248-49 (5th Cir. 2023) ................................................................... 10

*Paul Ins. Co. v. Trejo*,
   39 F.3d 585 (5th Cir. 1994) ........................................................................... 20, 21

*Pugh v. Arrow Elecs., Inc.,*
   304 F.Supp.2d 890, 894 (N.D. Tex. 2003) ........................................................... 14

*Randall D. Wolcott, M.D., P.A. v. Sebelius,*
   635 F.3d 757, 763 (5th Cir. 2011) ......................................................................... 5

*Sherwin-Williams Co. v. Holmes Cnty.*,
   343 F.3d 383, 389 (5th Cir. 2003) ....................................................................... 19

*Smith Int'l, Inc. v. Egle Grp.,* LLC,
   490 F.3d 380, 387 (5th Cir.2007) ......................................................................... 13

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283, 289 (1938) ....................................................................................... 6

*St. Paul Reinsurance Co. v. Greenberg*,
   134 F.3d 1250, 1253 (5th Cir. 1998) ................................................................ 4, 6, 9

*StubHub, Inc. v. Ball*,
  676 S.W.3d 193, 199–200 (Tex. App. 2023)............................................................................ 13

*Summit Residential Servs. LLC for Beacon Hill Village 11B Trust v. Ocwen Loan Servicing, LLC*,
  No. 3:15-CV01935-D, 2017 WL 4758884, at *9 (N.D. Tex. Oct. 20, 2017) ........................... 8

*Tucker v. Thomas*,
  419 S.W.3d 292, 295 (Tex. 2013) ........................................................................................... 8

*Tyler v. Citi-Residential Lending, Inc.*,
  812 F.Supp.2d 784, 787 (N.D.T.X. 2011) ....................................................................... passim

*Uzuegbunam v. Preczewski*,
  592 U.S. 279, 292 (2021)......................................................................................................... 1

*Weber v. PACT XPP Techs.*,
  *AG*, 811 F.3d 758, 766 (5th Cir. 2016)............................................................................ 10, 21

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
  751 F.2d 721, 728–29 (5th Cir. 1985)..................................................................................... 20

*Wilton v. Seven Falls Co.*,
  515 U.S. 277, 287 (1995)........................................................................................................ 19

*Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*,
  422 S.W.3d 821, 837–38 (Tex. App. 2014)............................................................................. 8

*Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center East, Inc.*,
  290 S.W.3d 554, 570–71 (Tex. App. 2009)............................................................................. 8

*Xia v. Floyd*,
  638 S.W.3d 821, 825–28 (2021) ............................................................................................ 10

**Statutes**

28 United States Code § 1331.................................................................................................... 5

28 United States Code § 1332............................................................................................. 1, 5, 7

28 United States Code § 1332(a) .............................................................................................. 5, 7

28 United States Code § 1404(a) ......................................................................................... passim

28 United States Code § 2201.................................................................................................. 4, 5

28 United States Code § 2201(a) .............................................................................................. 19

iv

**Other Authorities**

John F. Coyle & Tanya Monestier, *Limits on Damages for Breach of a Forum Selection Clause*, 66 SANTA CLARA L. REV. 94, 131 (2026)................................................................................. 11

**Rules**

Federal Rules of Civil Procedure 12(b)(1)................................................................................. 1, 4

Federal Rules of Civil Procedure 12(b)(2)............................................................................... 1, 18

Federal Rules of Civil Procedure 12(b)(6)............................................................................... passim

Federal Rules of Civil Procedure 1404(a) ...................................................................................... 3

**PRELIMINARY STATEMENT**

Defendant Ashley St. Clair respectfully submits this memorandum in support of her motion to dismiss Plaintiffs' First Amended Complaint ("FAC") for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure ("FRCP") 12(b)(1), failure to state a claim under FRCP 12(b)(6), lack of personal jurisdiction under FRCP 12(b)(2) and, in the alternative, asks the Court to decline to entertain Plaintiffs' request for declaratory relief.

This is a race to the courthouse dressed up as a lawsuit. xAI LLC and xAI Holdings Corp. ("xAI") filed this action for breach of contract and declaratory judgment against Ms. St. Clair, an individual, in the Wichita Falls Division of this District for the transparent purpose of preempting the suit Ms. St. Clair had announced, as required by New York State law, that she would bring in the United States District Court for the Southern District of New York ("S.D.N.Y."). The FAC fails at the threshold for four independent reasons.

First, this Court lacks subject-matter jurisdiction. The FAC pleads no federal question, and the sole asserted basis for jurisdiction—diversity under 28 U.S.C. § 1332—fails because the amount in controversy does not and cannot exceed $75,000. Plaintiffs cannot manufacture the jurisdictional amount through a speculative demand for attorney's fees and cannot rely on amounts that might accrue after filing, because jurisdiction is fixed at the moment the complaint is filed. Additionally, attorney's fees are not a redressable injury-in-fact and therefore cannot confer Article III standing. Plaintiffs' requests for declaratory judgment cannot cure this fundamental jurisdictional defect.

Second, even if subject matter jurisdiction existed, Plaintiffs fail to allege facts establishing that there is an enforceable forum selection clause controlling this dispute.  The venue selection

1

clauses are not material terms of the Terms of Service agreements set forth by Plaintiffs for which an action of breach, much less the expectations of attorneys' fees and expenses can be sought.

Third, this Court lacks personal jurisdiction over St. Clair, who has no contacts with Texas.

Finally, the declaratory-judgment claims are a textbook anticipatory filing. The Fifth Circuit has repeatedly approved dismissal of declaratory actions filed in anticipation of the natural plaintiff's suit, brought for forum-shopping purposes, or designed to let the declaratory plaintiff gain precedence in time and forum. Every one of those factors is present here.

Plaintiffs have not alleged a concrete, redressable injury sufficient to invoke this Court's jurisdiction and have failed to state a viable claim for relief or personal jurisdiction over St. Clair. Accordingly, Plaintiffs' FAC should be dismissed in its entirety and with prejudice.

## BACKGROUND

Plaintiffs commenced this lawsuit on January 15, 2026 for breach of contract after being notified by St. Clair's counsel on January 14, 2026, as required by New York State practice rules, of St. Clair's intent to seek an Ex Parte Temporary Restraining Order ("TRO") in New York against xAI to enjoin its product, Grok, from continuing to create and disseminate fake sexually explicit images of her, including images depicting her as a minor in a sexualized manner. FAC ¶ 55; *see also* FAC Ex. D, Dkt. 29-4, First Amended Complaint in *Ashley St. Clair v. X.AI Holdings Corp., et al.*, No. 1:26-cv-00386 (S.D.N.Y.). The notification was sent solely to xAI at the email address of legal@x.ai. FAC ¶ 55. St. Clair's counsel timely provided courtesy copies of the TRO on January 14, 2026, and her draft New York state complaint in the morning of January 15, 2026 prior to filing her TRO and complaint. FAC ¶¶ 56, 57.

On January 15, 2026, xAI filed a slapdash, anticipatory 7-page Complaint in the Northern District of Texas moments before the time St. Clair had notified xAI that she would be filing for relief in New York. Dkt. 1. The Complaint sought damages against St. Clair for allegedly breaching the xAI Terms of Service and for a declaratory judgment. *Id.*

On January 16, 2026, xAI filed an emergency motion under 1404(a) to transfer the New York case to Texas. FAC ¶ 63. The venue transfer motion remained pending in the trial court for months as it was extensively briefed by both sides, creating an extensive factual record and significant exposition of both parties' legal positions as to the forum-selection clause in xAI's Terms of Service. FAC ¶¶ 63, 64. At the time of filing this memorandum, the trial court's decision to transfer is currently stayed by the Second Circuit pending its review of St. Clair's petition for a writ of mandamus. St. Clair respectfully requests that this Court take judicial notice of that matter, captioned *Ashley St. Clair v. X.AI Holdings Corp., et al*., No. 1:26-cv-00386 (S.D.N.Y.), *appeal pending*, No. 26-1777 (2d Cir.) ("S.D.N.Y. docket" or "New York action").

On or about May 20, 2026, after it became clear during the extensive briefing of the 1404(a) motion in the New York action that there was no enforceable agreement between St. Clair and xAI as to xAI's Terms of Service, Plaintiffs pivoted to arguing that St. Clair had breached X's Terms of Service when she sued xAI in New York. However, X Corp. is not, and never has been, a party in litigation brought by St. Clair. *See* FAC Ex. D, Dkt. 29-4*, see also* S.D.N.Y. docket.

xAI then amended its Complaint in this matter and added X Corp. as a party and added a claim for breach of contract by St. Clair as to X's Terms of Service based on her filing a lawsuit against xAI in New York, despite X's non-party status to that proceeding. FAC ¶¶ 73-79.

The FAC alleges: (1) St. Clair breached the xAI Terms of Service by violating the forum selection clause or by refusing performance on her contractual obligations by "threatening to file

3

(and filing) a lawsuit against xAI LLC, xAI Holdings Corp., and X.AI Corp. in New York in violation of the forum-selection clause." FAC ¶ 70; (2) St. Clair breached the X Terms of Service by suing xAI Holdings LLC and xAI LLC, which it claims are "expressly designated third-party beneficiaries." FAC ¶ 76; (3) Plaintiffs are entitled to declaratory judgment under 28 U.S.C. § 2201 that the xAI Terms of Service are a "valid, binding, and enforceable contract" such that suing outside of Texas is a violation of the xAI Terms of Service. FAC ¶ 82; (4) Plaintiffs are entitled to declaratory judgment under 28 U.S.C. § 2201 that the X Terms of Service are a "valid, binding, and enforceable contract" such that suing outside of Texas is a violation of the X Terms of Service. FAC ¶ 85; Plaintiffs claim that St. Clair injured them in an amount exceeding $75,000 due to each of the two alleged breaches for "loss of time, extra efforts and costs expended, loss of contractually agreed-upon forum for resolution of disputes, and attorney's fees." FAC ¶¶ 71, 79.

## STANDARD OF REVIEW

A motion under Rule 12(b)(1) tests the court's power to hear the case at all. As the Supreme Court has held:

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . It is to be presumed that a cause lies outside the limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kakkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (internal citations omitted).

The burden therefore rests solely on Plaintiffs, as the party invoking this Court's jurisdiction, to establish that jurisdiction exists. *Id.*; *see also St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (party invoking diversity jurisdiction bears the burden of establishing the amount in controversy by a preponderance of the evidence).

4

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted).

## ARGUMENT

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS.

### a.    The Complaint Presents No Federal Question.

Federal question jurisdiction under 28 U.S.C. § 1331 extends only to actions "arising under the Constitution, laws, or treaties of the United States." Plaintiffs plead garden-variety state law claims: breach of contract and a request for a declaration of its rights under the Terms of Service agreements. A declaratory judgment claim does not itself supply federal question of jurisdiction. The Declaratory Judgment Act, 28 U.S.C. § 2201, is remedial only and requires an independent jurisdictional basis. *See Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010) ("A declaratory judgment claim is not jurisdiction-conferring; there must be an independent basis for federal jurisdiction."); *see also California v. Texas*, 593 U.S. 659, 672 (2021) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction."). Because none exists, jurisdiction stands or falls with diversity under 28 U.S.C. § 1332.

### b.    The Amount-in-Controversy Requirement is not Met and Cannot be Met.

Section 1332(a) grants diversity jurisdiction only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a).  Here, no

honest valuation of the object of this litigation approaches $75,000. Plaintiffs fail to show consideration paid or payable under either of the alleged agreements. Plaintiffs plead no actual damages, no liquidated damages, no indication that parties intended venue to be a material term of the Agreement. Further, Plaintiff X Corp. seeks attorney's fees as a result of litigation to which X Corp. is not, and has never been, a party.

Where, as here, it is apparent from the face of the FAC and from the nature of the contract itself that the claim cannot exceed the jurisdictional minimum, dismissal is required. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

Such legal certainty exists here: no theory of recovery available to xAI on the facts alleged could yield more than $75,000, exclusive of interest and costs. Moreover, xAI cannot cure this defect with conclusory allegations. A bare recitation that "the amount in controversy exceeds $75,000" does not discharge Plaintiffs' burden; the jurisdictional amount must either be facially apparent or established by evidence measured against the correct legal yardstick. *See Greenberg*, 134 F.3d at 1253.

### i.   *The Amount in Controversy Is Fixed at Filing; It Cannot Accrue Into Existence During the Pendency of the Case.*

Subject-matter jurisdiction is assessed as of the moment the complaint is filed—not as the case develops. The U.S. Supreme Court could not have been clearer: "It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.' This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)).

6

The Fifth Circuit applies the same rule to the amount in controversy specifically: "the jurisdictional facts must be judged as of the time the complaint is filed." *Greenberg*, 134 F.3d at 1252-53. Plaintiffs therefore may not point to damages, fees, or other amounts that might accrue during the pendency of the action to bridge the gap between the trivial value of its claims and the $75,000 threshold. If the amount in controversy did not exceed $75,000 on the date that the Complaint was filed—and, given that St. Clair had yet to even file the New York action when Plaintiffs rushed to file here first, it did not—this Court never acquired jurisdiction, and nothing that happens afterward can confer it.

### ii. A Demand for Attorney's Fees Cannot Supply the Jurisdictional Amount Here.

Nor can Plaintiffs bootstrap their way over the $75,000 threshold with a thinly veiled demand for attorney's fees. Section 1332 excludes "interest and costs" from the amount in controversy by its plain terms. 28 U.S.C. § 1332(a); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (attorneys' fees only go towards the amount-in-controversy where there is an entitlement to recover such fees by contract or statute). Attorney's fees may be counted only in the narrow circumstance where the substantive law gives the claimant an enforceable right to recover them—that is, where a statute or the contract itself makes fees "part of the matter put in controversy by the complaint, and not mere 'costs' excluded from the reckoning by the jurisdictional and removal statutes." *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933). That narrow exception does not work for Plaintiffs, for at least three independent reasons.

**(a)** First, Plaintiffs allege no fee-shifting provision, and Plaintiffs identify no statutory entitlement to fees adequate to bridge the gap. A fee demand untethered to any enforceable right is precisely the sort of "cost" § 1332 excludes.  Texas courts are unequivocal in following the American Rule, which "prohibits the recovery of attorney's fees from an opposing party in legal

7

proceedings unless authorized by statute or contract." *Summit Residential Services LLC for Beacon Hill Village 11B Trust v. Ocwen Loan Servicing, LLC*, No. 3:15-CV01935-D, 2017 WL 4758884, at \*9 (N.D. Tex. Oct. 20, 2017) (quoting *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013)). While Texas statutory law provides for a limited right to recovery of attorneys' fees in breach of contract claims, it does so only where "the party claiming the fees (1) prevails on its breach of contract claim and (2) recovers damages." *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837–38 (Tex. App. 2014) (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.002) (emphasis added). Texas law thus distinguishes between actual damages and attorneys' fees, in that the latter do not constitute actual damages and cannot create an entitlement to recover such fees. *See, e.g., In re Nalle Plastics Family Ltd. Partnership*, 406 S.W.3d 168, 173 (2013) ("While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are not, and have never been, damages."); *accord Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center East, Inc.*, 290 S.W.3d 554, 570–71 (Tex. App. 2009) (holding that where a party "claimed only that it was damaged by the commencement of...litigation in that it has had to retain and compensate attorneys to defend [the] action[,]" such fees are not recoverable on their own).

The sole injury pleaded in Plaintiffs' FAC is the "loss of time, extra efforts and costs expended, loss of a contractually agreed-upon forum for resolution of disputes, and attorneys' fees." FAC ¶¶ 71, 78. Although Plaintiffs X.AI, LLC and X.AI Holdings Corp. have dressed up a straightforward request for this Court to grant their attorneys' fees from defending the New York action in the language of monetary damages, it is clear from the face of the FAC that their pleaded injuries are simply the costs of litigation, and such costs are the only concrete injury identified in the FAC. And again, Plaintiff X Corp. is not, and has never been, a party to the New York action

8

and cannot plausibly claim to have incurred any actual losses resulting from that litigation. Accordingly, Plaintiff X Corp. cannot recover losses it did not sustain, even in the event that X.AI, LLC and/or X.AI Holdings Corp. are found to have some redressable injury.

**(b)** Even where a fee entitlement exists, only a reasonable, non-speculative estimate of fees as of the date of filing may be considered, because "the jurisdictional facts must be judged as of the time the complaint is filed." *Greenberg*, 134 F.3d at 1253. On the date xAI filed, it had incurred at most nominal fees based on St. Clair's one email threatening legal action. To date, St. Clair has never engaged X Corp. in litigation of any kind and its effort to hitch a ride off her litigation against xAI is devoid of legal merit and vengeful. A projection of fees to be run up over months or years of litigation is exactly the kind of post-filing accrual that the time-of-filing rule forbids. *See Grupo Dataflux*, 541 U.S. at 570.

**(c)** A fee demand grossly disproportionate to the underlying claim cannot be credited. Where the compensatory value of the claim is a small fraction of $75,000, treating an open-ended fee request as making up the difference would allow any plaintiff to manufacture federal jurisdiction over any state-law dispute simply by hiring overpriced lawyers incentivized to overstaff the case. That result is irreconcilable with the presumption against jurisdiction, *Kakkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and with the requirement that the claimed amount survive the legal-certainty test of *St. Paul Mercury*, 303 U.S. at 288-89.

### c. Plaintiffs have no redressable injury-in-fact to confer Article III standing.

Neither Plaintiffs' declaratory judgement claims nor those for damages are redressable by intervention from this Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (setting forth the injury-in-fact, causation, and redressability requirements for standing).

9

The established remedy for a party seeking to enforce a valid forum-selection clause is a motion to transfer venue under 28 U.S.C. § 1404(a) or to dismiss the action, not a standalone breach of contract action. In *Atlantic Marine*, the Supreme Court held that where a forum-selection clause points to another federal court in particular, the proper mechanism for enforcement of that right is for the invoking party to file a motion to transfer venue under 28 U.S.C. § 1404(a) in the action that the counterparty alleges was filed in a forum other than that which is designated in the contract. 571 U.S. 49, 52 (2013). This Circuit has consistently followed this framework. *See*, *e.g.*, *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016); *Noble House, L.L.C. v. Certain Underwriters at Lloyd's London*, 67 F.4th 243, 248-49 (5th Cir. 2023).

Texas state courts follow the same procedure. A motion to dismiss is "the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit." *HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 805 (Tex. App. 2018). Texas courts decide the validity, scope, and application of the clause in the action filed in the disputed forum. *See In re Nationwide Ins. Co. of Am*., 494 S.W.3d 708, 712–13 (Tex. 2016); *HMT Tank*, 565 S.W.3d at 805–09; *Xia v. Floyd*, 638 S.W.3d 821, 825–28 (2021).

Here, Plaintiffs petition this Court to fashion an entirely new remedy, unsupported by any applicable precedent, without any justification for an extension or modification of existing law. Texas courts, alongside its sister courts in other federal jurisdictions, recognize that venue is a disputable matter which should be resolved through the adversarial process in a 1404(a) motion in the original forum and not as an independent grounds for concurrent litigation.

Accordingly, Plaintiffs are not entitled to remedies beyond that which is available under the widely accepted, well-established doctrine codified in *Atlantic Marine* and its progeny. Not only have Plaintiffs brought this action to game the federal system to their own benefit; they have

done so by filing an action in this Court with no available redress, only further wasting judicial resources and offending the judicial process. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) (holding that, even in successful litigation, attorneys' fees for the prevailing party are a non-redressable "byproduct" of that litigation and cannot confer standing alone).

A recent decision by the Delaware Court of Chancery was particularly scathing about the "double whammy" injustice of awarding damages for breach of a forum selection clause, especially in consumer contracts and where the consumer brings a lawsuit in their home jurisdiction:

> Lurking behind the questions of contract law are policy considerations. From a societal perspective, should a party be able to recover damages for breach of a forum selection clause? When the parties are sophisticated and the breach clear, the answer is yes. . . There are competing policy concerns. Contracts of adhesion and scenarios involving disparate bargaining power introduces the risk that weaker parties (like consumers or line employees) may agree to a disadvantageous forum. If they seek in good faith to sue elsewhere, and if a court disagrees, then the weaker party might face the double-whammy of being relegated to the disadvantageous forum and owing damages for breach of the forum selection clause. That would work an injustice.

*Namdar v. Fried,* 340 A.3d 1184, 1207-08 (Del. Ch. 2025).

Legal scholars who are otherwise in favor of the creation of a framework that awards attorney fees for breached forum selection clauses make a categorical exception when it comes to consumer transactions because "there is no reason to put additional arrows in [the] quiver" of the corporate party drafting the agreement. John F. Coyle & Tanya Monestier, *Limits on Damages for Breach of a Forum Selection Clause*, 66 SANTA CLARA L. REV. 94, 131 (2026), *available at* https://scholarship.law.unc.edu/cgi/viewcontent.cgi?article=1750&context=faculty_publications.

11

To boot, this very lawsuit against St. Clair is condemned as an exemplar contract of adhesion which "cuts decisively against awarding damages for breach of the clause."[1]

Here, St. Clair filed in New York in good faith and Plaintiffs have had ample opportunity to challenge that forum in the New York action and, indeed, have availed themselves of that opportunity by filing a motion to transfer venue under 1404(a). There is no basis to award them extra relief beyond that which is already specified under binding precedent where such breach, if any, is unclear at best and Plaintiffs have not been denied the opportunity to seek enforcement of the purported forum-selection clauses and avail themselves of existing remedies. Where Plaintiffs have an adequate mechanism to enforce the purported contracts and have even availed themselves of that process, there is no injury-in-fact for this Court to redress.

Accordingly, Plaintiffs have failed to establish Article III standing in this dispute.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER RULE 12(B)(6).

Under Texas law, a breach of contract action requires: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by plaintiff as a result of the breach." *Tyler v. Citi-Residential Lending,*

---

[1] "A recent filing highlights the problems with awarding for breach of a forum selection clause in consumer contracts. Ashley St. Clair sued xAI in New York for allegedly generating sexually explicit images of her without her consent. One day later, xAI sued St. Clair in federal court in Tarrant County, Texas. xAI invoked a Texas forum selection clause in the company's terms of service to assert personal jurisdiction over St. Clair. It then stated a claim against her for "damages for breach of a forum-selection clause, including attorneys' fees incurred in defending against an action in the wrong forum [New York]." We can perceive no reason why xAI should be permitted to recover damages. Even if there was a breach of the forum selection clause on these facts— and we are not convinced that there was—the provision was written into a consumer contract of adhesion. This fact alone, in our view, cuts decisively against awarding damages for breach of the clause." Coyle & Monestier at 131.

*Inc.*, 812 F.Supp.2d 784, 787 (N.D.T.X. 2011) (citing *Smith Int'l, Inc. v. Egle Grp.,* LLC, 490 F.3d 380, 387 (5th Cir.2007)).

The first element, contract formation, requires: "(1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Tyler*, 812 F. Supp. 2d. At 787. "Whether mutual assent [to form a contract] exists is usually a question of fact, but it may become a question of law in some instances." *StubHub, Inc. v. Ball*, 676 S.W.3d 193, 199–200 (Tex. App. 2023). One such instance when mutual assent becomes a mixed question of law and fact is when the purported contract between the parties is an online contract of adhesion in the form of "clickwrap," "browsewrap," "sign-in wrap" or similar agreements between users of web-based services and those websites in the form of online Terms of Service. *Id.* at 200–01.

Here, Plaintiffs fail to state a claim for breach of contract as to either xAI or X's Terms of Service, because Plaintiffs fail to adequately allege that St. Clair entered into either of the purported "sign-in wrap" contracts. Since these online contracts of adhesion are the sole basis for Plaintiffs' claims, this action must be dismissed in its entirety pursuant to Rule 12(b)(6).

### a. Plaintiffs fail to state a claim for breach of contract with xAI.

Plaintiffs assert in the FAC that St. Clair created an xAI account in December 2024 and was "required to manifest assent to the xAI Terms of Service" during the account creation process. In support of this assertion, Plaintiffs describe in the abstract the general steps a hypothetical xAI user must have taken to create an xAI account at that time. However, Plaintiffs provide no

13

particularized factual allegations about what steps St. Clair herself took or when she did so. Plaintiffs' account of the generic sign-up process for xAI in the FAC, divorced from any factual allegation about St. Clair's own conduct, does not plausibly establish that St. Clair and Plaintiffs reached a meeting of the minds on any set of terms. In Texas, a bare assertion of assent to a contract is a legal conclusion the Court need not accept as true absent supporting factual allegations. *See, e.g., Pugh v. Arrow Elecs., Inc.*, 304 F.Supp.2d 890, 894 (N.D. Tex. 2003) ("The validity of a forum-selection clause in an adhesion contract also depends on whether the clause was reasonably communicated to the [counterparty].") (citation omitted); *Couch v. First Guaranty, Ltd*., 578 F. Supp. 331, 332 (N.D. Tex. 1984).

Tellingly, Plaintiffs fail to provide the xAI agreement they contend St. Clair agreed to in December 2024. *See* FAC ¶¶ 25, 27 ("Defendant signed up for an xAI account on December 10, 2024. . ." "Since at least December 10, 2024, to the present, those creating an xAI account have been presented with a webpage that states, '[b]y continuing, you agree to xAI's Terms of Service and Privacy Policy.") The xAI Terms of Service attached as Plaintiff's Exhibit A are dated November 4, 2025. FAC Ex. A, Dkt. 29-1. Plaintiffs describe these as "in effect at the time Defendant most recently used" the Service. FAC ¶ 35. However, the Terms that were in effect when St. Clair allegedly created her account, and the language of any forum-selection clause contained therein, appear nowhere in the FAC. Further, Plaintiffs provide no evidence that the November 4, 2025, terms should bind St. Clair such that her filing an action in New York constituted a breach thereof.

If contract formation—a necessary threshold element to establish breach of contract—cannot be established on the face of the pleadings, then each other element of breach of contract necessarily fails. *See Tyler*, 812 F.Supp.2d at 788 (holding that "a dearth of admissible evidence

presented by [Plaintiff]" regarding contract formation "also destroys the establishment of the other elements for a breach of contract.") Accordingly, Plaintiffs have failed to state a claim upon which relief may be granted as to any purported breach of xAI's Terms of Service by St. Clair, and therefore Plaintiffs' first and third claims must be dismissed pursuant to Rule 12(b)(6).

> **b.   Plaintiffs Fail to State a Claim Because Defendant Was Never Bound by Version 21 of X's Terms of Service.**

Plaintiffs' remaining breach-of-contract claim depends entirely on Version 21 of X's Terms of Service. FAC ¶ 76. Unlike Version 20, Version 21 added language purporting to extend X's forum-selection clause to third-party beneficiaries. *Compare* FAC Ex. B, Dkt. 29-2 *with* FAC Ex. C, Dkt. 29-3 at 12. Because X is not a defendant in the New York action, Plaintiffs can maintain their breach-of-contract claim only if St. Clair became bound by Version 21 and if xAI may enforce the newly added third-party-beneficiary provision. Plaintiffs plausibly allege neither.

According to the FAC, St. Clair received an in-app notification on December 16, 2025, advising that X's revised Terms of Service would become effective on January 15, 2026, and St. Clair clicked "Got It," thereby assenting to the revised Terms. FAC ¶ 48-49. But the Terms themselves foreclose that conclusion. Version 21 expressly provides that a user accepts the revised Terms only "[b]y continuing to access or use the Services after those revisions become effective." FAC ¶ 50. Thus, a click nearly one month before the effective date cannot constitute acceptance under the contract's own terms. Plaintiffs' allegation that St. Clair assented on December 16th is therefore a legal conclusion contradicted by the agreement they rely upon.

Recognizing this deficiency, Plaintiffs alternatively allege that St. Clair "used and/or accessed the X platform...on or after" January 15, 2026. FAC ¶ 52.  But this allegation merely restates the contractual condition for acceptance without pleading supporting facts. It identifies no specific login, session, or use occurring after the effective date. Instead, Plaintiffs simply recite the

language of the contract and characterize it as a factual allegation. Such conclusory allegations are not entitled to the presumption of truth under *Iqbal*. Because continued use after January 15th is the only means by which St. Clair could have accepted Version 21, and Plaintiffs have provided no supporting facts to buttress their conclusory assertion, Plaintiffs fail to plausibly allege the mutual assent necessary to form a binding contract under that version.

Even assuming, arguendo, that St. Clair became bound by Version 21 and its forum-selection clause does apply to this matter, Plaintiffs point to no language that would indicate St. Clair could reasonably have foreseen that X intended to include xAI, in all its corporate iterations, as a protected party thereunder. *See Epps v. NCNB Tex. Nat'l Bank*, 838 F.Supp. 296, 301 (1993) (holding that courts must interpret contracts in light of surrounding circumstances, present when the agreement was entered into, to determine the meaning that a "reasonably intelligent person" would attach to the language). xAI is not expressly mentioned once in either version of X's Terms of Service. FAC Ex. B, Dkt. 29-2; FAC Ex.C, Dkt. 29-3. Nor does xAI appear on the list of "U.S. corporate affiliates" that is linked in the Terms, even though two other affiliated companies are explicitly listed, Vine Archive and TwitPic Archive. FAC Ex. B, Dkt. 29-2 at 4; FAC Ex. C, Dkt. 29-3 at 4 (linking to https://help.x.com/en/rules-and-policies/x-services-and-corporate-affiliates).

Therefore, Plaintiffs cannot show that the mutual intent of the parties as to X's Terms of Service—to which xAI entities (the only entities named as defendants in the New York action), were not parties—was for xAI to have the ability to enforce those Terms in lawsuits to which X Corp. is a non-party. *See Tyler*, 812 F.Supp.2d at 787–88.

c. **Plaintiffs *fail to adequately allege the forum-selection clauses govern the instant dispute.***

Under Texas law, the Court must "look to the language of the parties' contracts to determine which causes of action are governed by the forum-selection clause." *Braspetro Oil Services Co. v.*

16

*Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007) (interpreting a Texas forum-selection clause). The alleged forum-selection clause that Plaintiffs seek to enforce states in relevant part:

> …all disputes related to these Terms, the Service, or any patents – including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Service or the complete or partial termination thereof – shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

FAC ¶¶ 6, 54. The Fifth Circuit interpreted a forum-selection clause with similar language (i.e., "arising from") in *Braspetro* and deemed it applicable because plaintiff's pleadings specifically relied on and alleged that the defendant corporation owed plaintiff duties under the contract that contained the forum-selection clause that defendant had moved to enforce. *See* 240 F. App'x. at 616–17. Therefore, the plaintiff could not seek to enforce its rights under the contract while simultaneously dodging the application of the forum-selection clause contained therein. In contrast, none of St. Clair's claims in the New York action arise from her use of xAI or any of its related services nor on the existence of any contract between her and xAI. FAC Ex. D, Dkt. 29-4.

In the New York action, St. Clair's claims exist and arise wholly separate from any relationship that she may have had with xAI, or vice versa. Plaintiffs concede as much: "[St. Clair's] lawsuit asserts that xAI failed to prevent its chatbot, Grok (deployed on the X platform), from generating and disseminating explicit images of St. Clair on X." FAC ¶ 61. This is because St. Clair challenges not her own use of Grok, nor even others' use of Grok *per se*, rather the conduct of Grok itself, and, correspondingly, xAI's own conduct in designing Grok to foreseeably abuse innocent people. In fact, she need not have used any of xAI's platforms at any point in time to have been harmed by the content that Grok produced, which depicted her without her consent in sexually explicit images

Even the broader language in the xAI Terms of Service (i.e., "related to") cannot bring St. Clair's present claims within the ambit of its forum-selection clause, because her claims do not rely even indirectly on the existence of any agreement between the parties. *See*, *e.g., J.V. & Sons Trucking, Inc. v. Asset Vision Logistics, LLC*, 1:20-CV-163-H, 2020 WL 10458645, at \*4–5 (N.D. Tex. Dec. 15, 2020) (enforcing forum-selection clause containing "relate to" language where the parties did not seek to enforce the agreement itself but invoked breach of the underlying contract in their pleadings).

In the New York action, St. Clair does not seek to enforce the contract or vindicate her rights thereunder, rather she seeks to recover under state statutory and common law that exist independently from any contract or terms between her and xAI. In fact, at no point in her complaint does she even reference xAI's Terms of Service or the duties it owed her – or anyone else – thereunder.

Because the claims in the New York action are not subject to the forum-selection clause contained in the Terms of Service, Plaintiffs' FAC must be dismissed pursuant to Rule 12(b)(6).

### III. PLAINTIFFS FAIL TO ESTABLISH PERSONAL JURISDICTION UNDER RULE 12(B)(2).

Plaintiffs' sole asserted basis for personal jurisdiction is the purported forum-selection clause contained in the alleged Terms of Service for X and xAI. As explained above, Plaintiffs have failed to plausibly allege the existence of a binding agreement or St. Clair's assent to these terms. Without a valid agreement, the purported forum-selection clauses in the Terms of Service cannot constitute St. Clair's consent to personal jurisdiction. Nor do Plaintiffs allege any independent basis for exercising personal jurisdiction over her. St. Clair is a resident of New York,

FAC ¶ 11, and has not purposefully availed herself of the privilege of conducting activities in Texas, and has not otherwise consented to suit there. Because Plaintiffs have failed to establish a *prima facie* basis for personal jurisdiction, the Complaint should be dismissed pursuant to Rule 12(b)(2).

## IV. THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS.

In addition to attorney's fees, Plaintiffs seek dual declaratory judgments as to whether St. Clair breached the purportedly binding forum-selection clauses in xAI and X's Terms of Service, respectively. This Court should decline to exercise jurisdiction over those claims.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 389 (5th Cir. 2003) (citing *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995)). Even where subject-matter jurisdiction exists, a district court is "under no compulsion to exercise" jurisdiction over a declaratory judgment action. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). The Fifth Circuit uses the seven non-exclusive *Trejo* factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit – evaluating the categories of federalism, fairness, and efficiency. *Sherwin-Williams, 343 F.3d* at 390 (*citing Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)). The *Trejo* factors weigh in favor of declining jurisdiction here.

With respect to federalism, although there is no parallel state-court proceeding, the previously filed New York action involves the same underlying controversy. FAC ¶¶ 55-65. A multiplicity of litigation on the same issue or issues is anathema to our nation's legal system, as it would impinge the jurisdiction and independence of sister courts to have two separate courts

independently but concurrently deciding the same issue. *See Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). Duplicative litigation over the same issues is disfavored because it risks inconsistent rulings and undermines comity between coordinate federal courts. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir. 1985) (noting that comity requires avoiding duplicative litigation and rulings that trench upon a sister court's authority, and that a court may dismiss an action where the same issue is already pending before another federal court).

With respect to efficiency, Plaintiffs concede they filed this action only after St. Clair noticed them of her New York action. FAC ¶¶ 55-58. Their declaratory judgment claims merely seek a declaration that St. Clair violated the X and xAI Terms of Service by filing that action. This is the very issue already before the Southern District of New York and now the Second Circuit. Through this anticipatory action, Plaintiffs put this Court in the position of making a potentially duplicative and potentially contradictory ruling. Or, if this Court were to wait for the Southern District of New York and the Second Circuit to reach a conclusive, final ruling on this issue, Plaintiffs' request for declaratory relief would then be non-justiciable as moot.[2]

It is obvious that Plaintiffs' declaratory judgment claim is an attempt to obtain a preferred forum for litigating defenses to the New York action. Plaintiffs could have timely filed a motion for transfer venue pursuant to 28 U.S.C. § 1404(a) once the New York action had been filed, as is the proper remedy to enforce forum-selection clauses under the framework established by the

---

[2] Conversely, should this Court rule on the issue first, the Southern District of New York and the Second Circuit Court above it will be voided of jurisdiction as to the forum-selection clauses, a fact that appears to have motivated Plaintiffs' filing of the present action in this Court before its sister courts could reach a conclusion on the issue properly before them.

Supreme Court in *Atlantic Marine*, which is faithfully applied in the Fifth Circuit. 571 U.S. 49 (2013) *accord Weber*, 811 F.3d at 766 (5th Cir. 2016) ("[T]he proper mechanism for enforcing...a [forum-selection] clause is a motion for transfer of venue under 28 U.S.C. § 1404(a)."). Indeed, Plaintiffs *did* file an emergency Order to Show Cause to transfer venue, but only *after* first rushing to this Court to file this anticipatory action in a competing forum to circumvent the Southern District of New York's proper exercise of jurisdiction and review of St. Clair's petition for relief. Plaintiffs' annoyance that St. Clair is using 1404(a) as intended – to resolve the issue of venue is not grounds for declaratory judgment. FAC ¶ 64 ("Defendant has resisted and continues to resist transferring the New York action to this Court.") The Declaratory Judgment Act was not intended to permit a party to obtain a procedural advantage by racing to another court to anticipatorily file for a declaration regarding issues already presented elsewhere. Allowing this case to proceed would permit Plaintiffs to use the Declaratory Judgment Act as a vehicle for forum shopping and would create the precise inequity *Trejo* seeks to avoid.

Finally, fairness also favors dismissal. St. Clair resides in New York, where the underlying litigation is already pending. Litigating overlapping issues simultaneously in Texas and New York would impose unnecessary burdens on the parties and witnesses while providing no corresponding benefit.

**CONCLUSION**

For the foregoing reasons, this Court should dismiss the FAC with prejudice.

Dated: July 20, 2026

Respectfully submitted,

_____

21

Carrie A. Goldberg, *Pro Hac Vice*
Naomi Leeds, *Pro Hac Vice*
Katherine McKay, *Pro Hac Vice*
C.A. Goldberg, PLLC
16 Court Street, 33rd Fl.
Brooklyn, New York 11241
646-666-8908 (phone)

JAY BLASS COHEN
Texas Bar # 24069528
Blass Law, PLLC
4245 N Central Expy, #490
Dallas, TX 75205
(713) 664-4000 (phone)
jay@blasslaw.com

*Attorneys for Defendant Ashley St. Clair*

22

23

## CERTIFICATE OF SERVICE

I, Carrie A. Goldberg, an attorney, hereby certify that on July 20, 2026, I caused a copy of the foregoing to be served via the Court's ECF system, which sent a copy of this filling to all counsel of record.

*/s/ Carrie Goldberg*
Carrie A. Goldberg