**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

X.AI LLC, X.AI HOLDINGS LLC, and X CORP.,

*Plaintiffs*,

v.

ASHLEY ST. CLAIR,

*Defendant.*

Case No. 7:26-cv-00005

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Defendant Signs Up for xAI and X, and Agrees to Their Terms of Service ..... 2

B. Defendant Sues Certain of the Plaintiffs in New York, in Violation of the Terms of Service ..... 5

C. The Court Transfers the New York Lawsuit to the Northern District of Texas ..... 6

D. Procedural History ..... 8

LEGAL STANDARD ..... 8

ARGUMENT ..... 9

I. Defendant's Jurisdictional Arguments Fail ..... 9

A. The Court Has Subject Matter Jurisdiction ..... 9

1. *The requirements for diversity jurisdiction are satisfied* ..... 9

2. *Defendant's contentions misunderstand the law and misstate the allegations* ..... 13

B. Plaintiffs Have Article III Standing ..... 17

C. Personal Jurisdiction Exists ..... 19

II. Plaintiffs Have Adequately Stated Claims ..... 20

A. Breach of Contract (Counts I and II) ..... 20

1. *xAI Terms of Service (Count I)* ..... 20

2. *X Terms of Service (Count II)* ..... 21

3. *Defendant's arguments fail* ..... 22

B. The Arguments for Dismissing the DJ Counts (III and IV) Fail ..... 24

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allen v. R & H Oil & Gas Co.*,
63 F.3d 1326 (5th Cir. 1995) ........ 2, 10, 16

*Allstate Fire & Cas. Ins. Co. v. Love*,
71 F.4th 348 (5th Cir. 2023) ........ 12

*Am. Airlines, Inc. v. Rogerson ATS*,
952 F. Supp. 377 (N.D. Tex. 1996) ........ 20

*Ashford v. Aeroframe Servs., L.L.C.*,
96 F.4th 783 (5th Cir. 2024) ........ 13

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ........ 18, 25

*Bank of New York Mellon v. Riley*,
2022 WL 1773364 (5th Cir. June 1, 2022) ........ 10, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 9

*Caraway v. Mandella*,
2021 WL 3475564 (N.D. Tex. Aug. 6, 2021) ........ 17

*Cupples Co. Mfrs. v. Farmers & Merchants State Bank*,
390 F.2d 184 (5th Cir. 1968) ........ 10, 14

*Denning v. Bond Pharmacy, Inc.*,
50 F.4th 445 (5th Cir. 2022) ........ 18

*Donaldson v. Crisp*,
2023 WL 12263686 (E.D. Tex. Mar. 14, 2023) ........ 9

*Durbois v. Deutsche Bank Nat'l Tr. Co.*,
37 F.4th 1053 (5th Cir. 2022) ........ 10, 13, 14

*Electrostim Med. Services v. Health Care Service Corp.*,
614 F. App'x 731 (5th Cir. 2015) ........ 21

*Escareno v. Stylecraft Home Collection Inc.*,
731 F. Supp. 3d 738 (N.D. Tex. 2024) ........ 12

*Euramerica Gas & Oil Corp. v. Britlind Energy LLC*,
2018 WL 11356913 (N.D. Tex. Apr. 20, 2018) ........ 23

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005) ........ 17

*Highland Cap. Mgmt., L.P. v. Bank of Am., Nat. Ass'n*,
698 F.3d 202 (5th Cir. 2012) ........ 24

*HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*,
565 S.W.3d 799 (Tex. App. 2018) ........ 18

*In re Nalle Plastics Family Ltd. Partnership,*
406 S.W.3d 168 (Tex. 2013) ........ 15

*In re Nationwide Ins.*,
494 S.W.3d 708 (Tex. 2016) ........ 18

*Kirby v. State Farm Lloyds*,
663 F. Supp. 3d 656 (N.D. Tex. 2023) ........ 9

*Landry v. IRX Therapeutics, Inc.*,
2017 WL 8161163 (W.D. Tex. Feb. 24, 2017) ........ 24

*Latitude Sols., Inc. v. DeJoria*,
922 F.3d 690 (5th Cir. 2019) ........ 17

*Latshaw v. Johnston*,
167 F.3d 208 (5th Cir. 1999) ........ 9

*Lopez v. JP Morgan Chase Bank, N.A.*,
2012 WL 2726762 (W.D. Tex. July 9, 2012) ........ 20

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
714 F.3d 714 (2d Cir. 2013) ........ 6

*Manguno v. Prudential Prop. & Cas. Ins.*,
276 F.3d 720 (5th Cir. 2002) ........ 11

*Medallion Transp. & Logistics LLC v. Superior Choice Logistic, Inc.*,
2016 WL 775697 (N.D. Tex. Feb. 29, 2016) ........ 12

*Mission Techs. Inc. v. STMicroelectronics Inc.*,
2024 WL 150504 (N.D. Tex. Jan. 11, 2024) ........ 19

*Monitronics Int'l, Inc. v. Skyline Sec. Mgmt., Inc.*,
2017 WL 2882624 (N.D. Tex. July 5, 2017) ........ 9

*Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*,
625 F. App'x 617 (5th Cir. 2015) ........ 6

*Namdar v. Fried*,
340 A.3d 1184 (Del. Ch. 2025) ........ 14, 15, 18, 19

*Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*,
67 F.4th 243 (5th Cir. 2023) ........ 18

*Norvil v. DuPont Powder Coatings USA, Inc.*,
2010 WL 1609927 (S.D. Tex. Apr. 20, 2010) ........ 14

*Penson v. Cap. One, N.A.*,
2026 WL 1579332 (N.D. Tex. May 7, 2026) ........ 10

*Perrin v. Smith*,
2013 WL 12190190 (S.D. Tex. Apr. 9, 2013)........................................................................ 23

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005)................................................................................................ 22

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001).................................................................................................. 8

*Republic Servs., Inc. v. Texas Ecological Servs.*,
118 F. Supp. 2d 775 (S.D. Tex. 2000)................................................................................... 25

*RLI Ins. Co. v. Roberts*,
819 F. App'x 227 (5th Cir. 2020) .......................................................................................... 18

*Robertson v. Exxon Mobil Corp.*,
814 F.3d 236 (5th Cir. 2015)........................................................................................... 10, 13

*Rogovsky Enterprise, Inc. v. Masterbrand Cabinets, Inc.*,
2016 WL 6432620 (S.D. Ind. Oct. 31, 2016)................................................................... 15, 18

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) ................................................................................................................ 13

*Sherwin-Williams Co. v. Holmes Cty.*,
343 F.3d 383 (5th Cir. 2003)................................................................................................ 25

*Smith Int'l, Inc. v. Egle Group, LLC*,
490 F.3d 380 (5th Cir. 2007)................................................................................................ 20

*St. Paul Ins. Co. v. Trejo*,
39 F.3d 585 (5th Cir. 1994).................................................................................................. 25

*St. Paul Reinsurance Co. v. Greenberg*,
134 F.3d 1250 (5th Cir. 1998).............................................................................................. 14

*Transilwrap Co., Inc. v. Nelson*,
2016 WL 9408992 (N.D. Tex. Aug. 10, 2016) ...................................................................... 12

*U.S. Bank, N.A. v. Rocha,*
2018 WL 2925135 (W.D. Tex. June 11, 2018)................................................................ 13, 16

*Vianet Grp. PLC v. Tap Acquisition, Inc.*,
2016 WL 4368302 (N.D. Tex. Aug. 16, 2016) ........................................................... 11, 15, 18

*Watson v. Provident Life & Acc. Ins. Co.,*
2009 WL 1437823 (N.D. Tex. May 22, 2009)....................................................................... 14

*Weber v. PACT XPP Techs., AG*,
811 F.3d 758 (5th Cir. 2016)................................................................................................ 18

*White Knight Dev., LLC v. Simmons*,
718 S.W.3d 203 (Tex. 2025) ................................................................................................ 19

*White v. FCI USA, Inc.*,
319 F.3d 672 (5th Cir. 2003) ........ 13

*Wilson v. Hibu Inc.*,
2013 WL 5803816 (N.D. Tex. Oct. 28, 2013) ........ 16

*Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*,
422 S.W.3d 821 (Tex. App. 2014) ........ 11

*Xia v. Floyd*,
638 S.W.3d 821 (Tex. App. 2021) ........ 18

**Statutes**

28 U.S.C. § 1367(a) ........ 17

28 U.S.C. § 1404(a) ........ 5

Tex. Civ. Prac. & Rem. Code § 37.009 ........ 17

Tex. Civ. Prac. & Rem. Code § 38.001 ........ 11

**Other Authorities**

John F. Coyle & Tanya Monestier, *Limits on Damages for Breach of a Forum Selection Clause*,
66 Santa Clara L. Rev. 94 (2026) ........ 18

## INTRODUCTION

X.AI LLC, X.AI Holdings LLC, and X Corp. (together, "Plaintiffs") respectfully oppose Defendant Ashley St. Clair's motion to dismiss. Defendant agreed to clear and enforceable forum-selection clauses in the xAI Terms of Service and in two successive versions of the X Terms of Service, each of which requires that certain disputes be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas. Defendant then breached those agreements by filing suit in New York—where Judge Carter of the Southern District of New York held that Defendant breached her agreement to litigate in Texas and ordered transfer of Defendant's lawsuit to this District. Judge Carter held that Defendant manifested assent to the X Terms of Service, that the Terms' forum-selection clause governed her claims, and that she failed to rebut its presumptive enforceability.

Plaintiffs bring this standard breach-of-contract action to obtain declaratory relief confirming their contractual rights and to recover damages flowing from Defendant's violation of the parties' agreement, including the substantial attorney's fees incurred in litigating the motion to transfer and in prosecuting this action. Once the Second Circuit disposes of Defendant's pending mandamus petition, Plaintiffs expect to move for summary judgment in short order.

In the face of a plain agreement and breach, Defendant offers a grab bag of jurisdictional and pleading objections, none of which has merit. Her subject-matter jurisdiction arguments fail because the amount in controversy plainly exceeds $75,000: Plaintiffs incurred (and continue to incur) substantial attorney's fees litigating the motion to transfer in New York and prosecuting this action, and those fees are recoverable both as contract damages under Texas law and as statutory attorney's fees; she certainly cannot show "to a legal certainty that the claim is really

for less than the jurisdictional amount." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Her Article III standing challenge is equally without merit. A breach of contract is clearly a cognizable injury, and the fact that Defendant's lawsuit might be transferred has no relation to, much less undermines, Plaintiffs' right to sue for damages and declaratory relief. Finally, Defendant's personal jurisdiction objection is simply a repackaged merits argument—if, as Plaintiffs have alleged, Defendant is bound by the Terms of Service, then she consented to personal jurisdiction in this forum.

On the merits, Defendant's challenges to the sufficiency of Plaintiffs' breach-of-contract claims ignore both the allegations in the First Amended Complaint and the conclusions Judge Carter already reached in his opinion ordering the case transferred to the agreed forum. Taking the facts in the First Amended Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this stage, Plaintiffs have adequately stated claims for breach of contract and declaratory relief. The motion should be denied.

## BACKGROUND

Plaintiff X Corp. ("X") operates the X platform, which was formerly known as Twitter. First Am. Compl. ("FAC") ¶ 2. Plaintiff X.AI LLC ("xAI LLC") and Plaintiff X.AI Holdings LLC (previously X.AI Holdings Corp.) (together "xAI") operate various technologies, including the generative AI chatbot known as Grok. *Id.* Grok "is an AI Assistant and AI companion" with "advanced capabilities in reasoning, coding, and visual processing." *Id.* ¶ 21.

### A. Defendant Signs Up for xAI and X, and Agrees to Their Terms of Service

xAI and X both have Terms of Service, which all users of those services must agree to in order to use or to access the services. *Id.* Exs. A, B, C.

**xAI Terms of Service**. Defendant signed up for an xAI account on December 10, 2024, and manifested assent to the xAI Terms of Service in force at that time. *Id.* ¶¶ 25–30. When she signed up, all users were presented with a webpage stating "[b]y continuing, you agree to xAI's **Terms of Service** and **Privacy Policy**." *Id.* ¶¶ 27–29. In that statement "Terms of Service" and "Privacy Policy" were bolded and hyperlinked. *Id.* ¶ 28.

Moreover, those Terms of Service stated: "[y]our continued use of the Service after any change to these Terms constitutes your acceptance of the new Terms of Service." *Id.* ¶ 31. xAI's Services were defined to include "Grok." *Id.* ¶ 32.

The xAI Terms of Service were updated on November 4, 2025, and required that all disputes relating to or arising out of the xAI "Services" (or "Content") were to "proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas." *Id.* ¶¶ 34–35. Defendant used xAI's Services as recently as January 2026. *Id.* ¶ 33.

**X Terms of Service**. As the First Amended Complaint sets forth, two versions of the X Terms of Service are implicated by Plaintiffs' claims: "Version 20" of the X Terms of Service was in effect from November 15, 2024 to January 15, 2026. *Id.* ¶ 40. "Version 21" of the X Terms of Service was in effect from January 15, 2026 to April 9, 2026. *Id.* ¶ 42.[1]

<u>Version 20</u>. X Corp.'s records show that Defendant created her X account on November 12, 2014. *Id.* ¶ 37. She used X many times over the years. *Id*. ¶ 52 & *infra* n.5.

When X Corp. changed its Terms of Service to Version 20, "it sent all users in-app prompts through the X platform notifying them of the revised terms." *Id*. ¶ 44. That same day, Defendant

---

[1] X's current Terms of Service (Version 22) came into effect on April 10, 2026. *See Terms of Service*, X, https://x.com/en/tos.

"clicked" a "Got It" button in response to an in-app prompt, thereby manifesting assent to Version 20. *Id.* ¶¶ 44–46.

Version 20 is governed by "[t]he laws of the State of Texas" and contains a forum-selection clause, requiring that all "disputes related to or arising from other users' and third parties' use of the Services and any Content . . . will be brought exclusively in" Texas courts. *Id.* ¶ 53 (quoting Version 20). It defines "Services" as "access to and use of our services, including our various websites, SMS, APIs, email notifications, [and] applications." *Id.* Ex. B (PDF p. 3). It defines "Content" as "any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services." *Id.* Ex. B (PDF p. 4). And Version 20's limitation of liability clause covers the "X Entities," defined as "X Corp., its parents, affiliates, related companies." *Id.* Ex. B, § 5.

Version 21. When X Corp. next updated its Terms of Service, it again sent all users a prompt through the X platform notifying them of the revised terms. Defendant again received this prompt and clicked the "Got It" button on December 16, 2025. *Id.* ¶¶ 44, 48–49. Version 21, like Version 20, provided that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." *Id.* ¶ 50. Defendant accessed and/or used the X platform after Version 21 became effective. *Id.* ¶¶ 50–52.

Version 21 requires that "all disputes" (whether "pending" or in the "future" and "regardless of when the conduct relating to the dispute arose or occurred") "arising from" a user's (or others') use of the X "Service," or "Content" on X, "shall be brought and must proceed exclusively" in federal or state court in Tarrant County, Texas. *Id.* ¶ 54. "Services" are defined to include "access to and use of and anything otherwise relating to, our or our corporate affiliates' services." *Id.* Ex. C (PDF p. 4). Version 21 also specifies that "[t]he choice of law and forum

selection provisions of this paragraph shall also extend to disputes involving [X's] U.S. corporate affiliates, who are intended third-party beneficiaries of this paragraph." *Id.* Ex. C, § 6.

### B. Defendant Sues Certain of the Plaintiffs in New York, in Violation of the Terms of Service

On January 15, 2026, Defendant sued X.AI Holdings Corp.—predecessor to Plaintiff X.AI Holdings LLC—and Plaintiff X.AI LLC and X.AI Corp. (the "X.AI entities") in New York State Court, which the X.AI entities removed to the Southern District of New York (the "New York Lawsuit"). *See* Notice of Removal, *St. Clair v. X.AI Holdings Corp.*, 1:26-cv-000386-ALC (Jan. 15, 2026, S.D.N.Y.), Dkt. 1 ("SDNY Dkt.").[2] That lawsuit alleges xAI "failed to prevent its chatbot, Grok (deployed on the X platform), from generating and disseminating explicit images of Defendant on X." FAC ¶ 60. Defendant's lawsuit claims that "Ms. St. Clair's claims are concerned with Grok's integration into X and its own output it publishes on X." *Id.* ¶ 62 (quoting SDNY Dkt. 36 ¶ 23); *see also* SDNY Dkt. 36 ¶ 7 ("Defendants are directly liable for the harassment and explicit images created by its own chatbot, Grok, and disseminated on its own platform, X."); *id.* ¶ 81 (alleging that "X" unexplainedly "removed Ms. St. Clair's Premium subscription, her verification checkmark, and demonetized her account by banning her from the monetization and subscriber program"); *id.* ¶ 166 ("The deepfake images depicting Plaintiff that Defendants created via Grok and published via X are falsehoods.").

The X.AI entities moved to transfer the case under 28 U.S.C. § 1404(a). Specifically, they argued that transfer was proper pursuant to the forum selection clauses in the xAI Terms of Service and both Version 20 and Version 21 of the X Terms of Service, which required that the New York

[2] The original complaint only named X.AI Holdings Corp. X.AI LLC and X.AI Corp. were added as defendants when Defendant amended her complaint. *See* SDNY Dkt. 36.

Lawsuit be filed in Texas. *See, e.g.*, SDNY Dkts. 16, 23, 91.[3] Although X was not named as a defendant, the X.AI entities argued that the Version 20 and Version 21 were applicable to the dispute under the "closely related" doctrine, *see Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714 (2d Cir. 2013), and because the X.AI entities were third-party beneficiaries of Version 21's forum-selection clause, *see* SDNY Dkt. 91 at 1–3. The parties filed 13 written briefs, 16 factual affidavits, and appeared for two hearings on the motion to transfer. *See* SDNY Dkts. 11–95.

**C. The Court Transfers the New York Lawsuit to the Northern District of Texas**

On June 23, 2026, in a thorough fourteen-page opinion, Judge Carter granted the motion and ordered transfer of the New York Lawsuit to the Northern District of Texas. *See* SDNY Dkt. 96. The Court found that Version 21 governed her claims, that the forum-selection clause within Version 21 was enforceable, and that Defendant failed to rebut the forum-selection clause's presumptive enforceability. SDNY Dkt. 96 at 4–13.

To begin, the Court found that Defendant manifested assent to (and was therefore bound by) Version 21 of the X Terms of Service through two different ways. *First*, the Court held that she both assented to, and was bound by, Version 21 on December 16, 2025. The Court explained that the X.AI entities "provided records reflecting Plaintiff received a prompt for Version 21 of the TOS and clicked through them before clicking on the 'Got It' button on December 16, 2025, at 11:37a.m." *Id.* at 7. From this, the Court concluded that she had "inquiry notice of the updated TOS," and that she "manifested her assent to be bound by the updated terms on this date even though the updated terms did not go into effect until January 15, 2026." *Id.*

---

[3] The Court can take judicial notice of the filings and orders in the New York Lawsuit. *Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) ("tak[ing] judicial notice of court pleadings in other cases").

*Second*, the Court independently held that the X.AI entities evidenced "Plaintiff's use of X's services on or after January 15, 2026" because they "provided an access log of [her] X account showing that she accessed the X platform multiple times after January 15, 2026." *Id.* at 8. Because "Version 21 states that one agrees to be bound by the terms by 'continuing to access or use the Services after those revisions become effective,'" *id.* (quoting Version 21), Defendant's access or use after January 15, 2026 was also enough to bind her to Version 21.

Next, the Court determined that the forum selection clause applied to the dispute and that the X.AI entities could enforce it as third-party beneficiaries. It explained that the dispute was governed by Version 21 because Defendant's "allegations concern a dispute relating to the creation of certain Content and use of the Services on X and X.AI." *Id.* at 10. Further, the clause was enforceable by the X.AI entities as third-party beneficiaries "under both Texas and New York state law" because they are all corporate affiliates of X. *Id.* at 11.

Finally, Defendant could not rebut the presumption of enforceability because Defendant's arguments about the supposed costs and inconvenience of litigating in Texas are "not [] consideration[s] on a § 1404(a) motion based on a valid forum selection clause." *Id.* at 14 n.3.

Defendant thereafter filed a petition for a writ of mandamus with the U.S. Court of Appeals for the Second Circuit, and moved the district court to stay effect of the transfer order. On July 2, 2026, Judge Carter denied Defendant's stay motion, explaining that (among other grounds), Defendant failed to show a likelihood of success on her mandamus petition. SDNY Dkt. 102. On July 8, 2026, the Second Circuit issued an administrative stay while it considers Defendant's motion for a stay. That administrative stay remains in effect.

Given the voluminous briefing and motion practice that has accompanied Plaintiffs' attempts to enforce the Terms of Service, the X.AI entities have spent well over $75,000 litigating the motion to transfer. FAC ¶ 66; Declaration of Gregory Dubinsky ("Dubinsky Decl.") ¶ 3.

**D. Procedural History**

xAI filed its Complaint on January 15, 2026. *See* Dkt. 1. Defendant moved to dismiss on April 29, 2026. Dkt. 25. Pursuant to the parties' agreement, xAI filed the FAC, adding X Corp. as a plaintiff and adding claims for breach of the X Terms of Service; Defendant's then-pending motion to dismiss was denied as moot. Dkts. 29, 33.

Pursuant to the Court's order of May 11, 2026 (Dkt. 28), Defendant's motion to dismiss the FAC was due June 17, 2026. Defendant did not file a motion to dismiss by that date. Instead, Defendant sought a *nunc pro tunc* extension on July 9, 2026 (three weeks after the deadline elapsed), seeking leave to file a renewed motion to dismiss by July 20, 2026, which, as a professional courtesy, Plaintiffs did not oppose and which the Court granted. Dkts. 45, 46.

## LEGAL STANDARD

Subject-matter jurisdiction. "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute," and "[u]ltimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citation omitted).

Personal jurisdiction. On a motion to dismiss for lack of personal jurisdiction, unless it holds an evidentiary hearing, a court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts"; "[t]herefore . . . a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

<u>Stating a claim</u>. "A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified); *Donaldson v. Crisp*, 2023 WL 12263686, at *24 (E.D. Tex. Mar. 14, 2023) ("It is settled law that a breach of contract claim does not need detailed factual information to survive a 12(b)(6) motion to dismiss."). A plaintiff need not "set forth the 'who, what, when, where, and how' of the alleged breach in order to state a claim." *Monitronics Int'l, Inc. v. Skyline Sec. Mgmt., Inc.*, 2017 WL 2882624, at *4 (N.D. Tex. July 5, 2017). All that is required is that he "provide the grounds for [his] entitlement to relief." *Id.*

## ARGUMENT

### I. Defendant's Jurisdictional Arguments Fail

Defendant's potpourri of jurisdictional objections—which run the gamut from subject-matter jurisdiction to Article III to personal jurisdiction—all fail.

#### A. The Court Has Subject Matter Jurisdiction.

##### *1. The requirements for diversity jurisdiction are satisfied*

Section 1332 grants federal district courts jurisdiction "of all civil actions where" the amount in controversy exceeds $75,000 and the suit "is between[] citizens of different States." Plaintiffs' FAC adequately alleges each of these requirements.

To begin, there is no question that there is "complete diversity of citizenship." *Kirby v. State Farm Lloyds*, 663 F. Supp. 3d 656, 662 (N.D. Tex. 2023); *see also* FAC ¶¶ 12–17. Defendant does not suggest otherwise.

Plaintiffs similarly satisfy the amount-in-controversy requirement, notwithstanding Defendant's bare assertion that it is a "legal certainty" that "no theory of recovery . . . could yield more than $75,000." Mot. 6. She is wrong.

As Defendant acknowledges, in order for a court to refuse jurisdiction under the amount-in-controversy requirement, "it [must] appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). "The amount in controversy 'is determined by the amount of damages or the value of the property that is the subject of the action.'" *Penson v. Cap. One, N.A.*, 2026 WL 1579332, at *3 (N.D. Tex. May 7, 2026) (quoting *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 319 (5th Cir. 2012) (per curiam)), *report and recommendation adopted*, 2026 WL 1579149 (N.D. Tex. June 2, 2026). "The required demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) (citation modified); *see also Durbois v. Deutsche Bank Nat'l Tr. Co.*, 37 F.4th 1053, 1057 (5th Cir. 2022) ("[T]he amount that will be put at issue in the course of the litigation[.]").

Specifically, the amount in controversy in a breach of contract action is measured by "benefit of the bargain damages" which are "intended to place the injured party as nearly as possible in the position that he would have occupied had the defending party performed the contract." *Bank of New York Mellon v. Riley*, 2022 WL 1773364, at *3 (5th Cir. June 1, 2022) (citation modified). Thus, if Plaintiffs were "denied a benefit of the bargain that exceeded the requisite amount in controversy," then the amount has been met. *Id.* As is black-letter law, "[a]ttorney['s] fees are includible in the jurisdictional amount in controversy." *Cupples Co. Mfrs. v. Farmers & Merchants State Bank*, 390 F.2d 184, 184 (5th Cir. 1968).

Plaintiffs satisfy the amount-in-controversy requirement. Plaintiffs seek *both* (i) "contractual monetary damages" (*i.e.*, fees expended in the New York Lawsuit seeking to

transfer the case here) and (ii) "attorney's fees" (*i.e.*, fees expended in this action seeking to enforce the breach of contract). FAC ¶¶ 66, 71–72, 79.

As to the first category, attorney's fees incurred in seeking to transfer cases filed in the wrong forum are recoverable as contract damages. *Infra* 14–16 (discussing cases), 17–19 (same); *see, e.g.*, *Vianet Grp. PLC v. Tap Acquisition, Inc.*, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2016) ("[T]he Court concludes that the Supreme Court of Texas would characterize attorneys' fees as damages if they were incurred in prior litigation as a result of a breached forum selection clause.").

As to the second category, as Defendant admits, "attorneys' fees [] go towards the amount-in-controversy where there is an entitlement to recover such fees by contract or statute." Mot. 7 (citing *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002)). And she admits that "Texas statutory law provides for a limited right to recovery of attorneys' fees in breach of contract claims." *Id.* at 8 (citing *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837–38 (Tex. App. 2014)). As *Woodhaven* explains, attorney's fees are available by statute when "the party claiming the fees (1) prevails on its breach of contract claim and (2) recovers damages." 422 S.W.3d at 838. So there is a "a state statute [that] provides for attorney's fees [and] such fees are included as part of the amount in controversy." *Manguno*, 276 F.3d at 723; *see also* Tex. Civ. Prac. & Rem. Code § 38.001 (allowing recovery for attorney's fees "if the claim is for . . . . an oral or written contract").

Defendant's conclusory allegation that the amount-in-controversy requirement is not met ignores Plaintiffs' pleadings. Plaintiffs have pleaded a "specific amount." *Bank of New York Mellon*, 2022 WL 1773364, at *3. In Plaintiffs' original Complaint (Dkt. 1, ¶¶ 13, 24–32) they "asserted claims for breach of contract" and declaratory relief "and alleged damages in excess of

[] $75,000." *Medallion Transp. & Logistics LLC v. Superior Choice Logistic, Inc.*, 2016 WL 775697, at *2 (N.D. Tex. Feb. 29, 2016) (citation modified). In the FAC, Plaintiffs specifically alleged that they "have expended well over $75,000 in attorney's fees in seeking to transfer the New York action and prosecuting this action." FAC ¶ 66; *see Bank of New York Mellon*, 2022 WL 1773364, at *3 ("Here, the Bank identifies a specific amount, stating it seeks damages greater than $150,000." (citation modified)). Accordingly, these allegations show "it is facially apparent that the claims exceed the jurisdictional amount," which is enough to satisfy the amount-in-controversy requirement. *Allstate Fire & Cas. Ins. Co. v. Love*, 71 F.4th 348, 351 (5th Cir. 2023). Indeed, "[t]hese good faith allegations ***alone*** are sufficient to satisfy the amount-in-controversy requirement." *Medallion Transp.*, 2016 WL 775697, at *2 (emphasis added); *see also Escareno v. Stylecraft Home Collection Inc.*, 731 F. Supp. 3d 738, 752 (N.D. Tex. 2024) ("Plaintiffs' pleading 'monetary relief over $1,000,000' . . . is enough [to show] that the amount-in-controversy requirement is met because it is facially apparent that Plaintiffs seek a sum or value that exceeds $75,000." (internal citation omitted)); *Transilwrap Co., Inc. v. Nelson*, 2016 WL 9408992, at *1 & n.2 (N.D. Tex. Aug. 10, 2016).

Regardless, for the avoidance of all doubt, Plaintiffs submit herewith a declaration setting forth that Plaintiffs' contract damages currently exceed $250,000, and their attorney's fees in litigating this action are at least $100,000. Dubinsky Decl., ¶¶ 3–4. And those damages continue to accrue, given that Defendant's petition for a writ of mandamus currently sits with the Second Circuit, which may order a response to the petition and/or request oral argument.

"Thus, based on the Complaint and Plaintiff's anticipated attorney's fees in this case, the amount-in-controversy requirement is satisfied." *U.S. Bank, N.A. v. Rocha,* 2018 WL 2925135, at *2 (W.D. Tex. June 11, 2018).

*2. Defendant's contentions misunderstand the law and misstate the allegations*

Against this, Defendant poses four principal objections: (1) the amount in controversy does not account for damages that accrue during suit; (2) attorney's fees incurred in the New York Lawsuit in transferring the action are not proper damages; (3) the amount sought here is "grossly disproportionate to the underlying claim"; and (4) X has not suffered any losses. Mot. 5–12. These objections fail across the board.

***The amount-in-controversy considers "what the plaintiff is claiming" and can include accruing and future damages.*** Defendant argues that Plaintiffs cannot "point to damages, fees, or other amounts that might accrue during the pendency of the action." *Id.* at 7. She cites not a single case in support of that sweeping proposition, which is wrong as a legal matter.

Instead, as noted, the Fifth Circuit has instructed that Courts ***must*** assess "***what the plaintiff is claiming***," not what damages had accrued at the time of filing. *Exxon Mobil*, 814 F.3d at 240; *see also Durbois*, 37 F.4th 1057 ("the amount that will be put at issue in the course of the litigation"); *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 38 n.8 (2025) (amount-in-controversy looks to "the value of a suit"). Indeed, the Fifth Circuit has expressly recognized that the amount in controversy can take into account "continuing and future damages." *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003); *see also Ashford v. Aeroframe Servs., L.L.C.*, 96 F.4th 783, 796 n.8 (5th Cir. 2024) ("Although past wages due may be negligible, future lost wages, future benefits lost, and attorney fees for the prosecution of this matter place the amount in controversy well above the minimum threshold." (citation modified)).

Hence, courts within this Circuit routinely consider accruing and future damages when assessing the amount in controversy. *See, e.g.*, *Norvil v. DuPont Powder Coatings USA, Inc.*, 2010 WL 1609927, at *2 (S.D. Tex. Apr. 20, 2010) (rejecting claim that "front pay accruing in

the future cannot be considered in determining that amount in controversy" because "courts have included continuing and future damages in the amount in controversy"). Indeed, attorney's fees, which as discussed are included in the amount-in-controversy, *supra* at 11, are by their very nature damages that *accrue* (and in fact are conditional on a successful outcome). *See Watson v. Provident Life & Acc. Ins. Co.,* 2009 WL 1437823, at *6 (N.D. Tex. May 22, 2009) ("[C]ourts in this Circuit have used the amount of attorney's fees the plaintiff estimated it would accrue through the end of trial in determining whether the amount in controversy was met for subject matter jurisdiction"); *Cupples Co.*, 390 F.2d at 184; *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (penalties, statutory damages, and attorney's fees are included in the amount in controversy).

*Greenberg*, cited by Defendant, is not to the contrary; there, the Fifth Circuit reiterated the uncontroversial proposition that "jurisdictional facts must be judged as of the time the complaint is filed," 134 F.3d at 1253, meaning that the facts undergirding the "estimate of the amount that will be put at issue in the course of the litigation," *Durbois*, 37 F.4th 1057, are assessed at the time of the operative complaint. For the reasons given, the jurisdictional facts at the time of the filing of the complaint make clear the amount-in-controversy is satisfied.

***Attorney's fees in the New York Lawsuit are cognizable contract damages***. Defendant says the "costs of litigation" are not recoverable as damages for breach of a forum-selection clause. Mot. 8. She is wrong. *See Namdar v. Fried*, 340 A.3d 1184, 1195 (Del. Ch. 2025) (holding attorney's fees recoverable as expectation damages where the non-breaching party "had a reasonable expectation that it would not have to suffer damages litigating elsewhere"); *accord Rogovsky Enterprise, Inc. v. Masterbrand Cabinets, Inc.*, 2016 WL 6432620, at *3 (S.D. Ind. Oct. 31, 2016) (non-breaching party "entitled to recover as damages the loss actually suffered as

a result of the breach" because fees are "a natural and foreseeable consequence of litigating a motion to transfer based on a valid forum-selection clause" (citation modified)). Likewise, "Texas's intermediate appellate courts have held that parties may recover attorneys' fees from prior litigation as damages." *Vianet Grp. PLC v. Tap Acquisition, Inc.*, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2016). Thus, Plaintiffs' attorney's fees from litigating the motion to transfer are "damages [because] they were incurred in prior litigation as a result of a breached forum selection clause." *Id.* at *9.

Defendant cites cases concerning an entirely different proposition: that attorney's fees incurred in a litigation do not count as "contract" damages in that *same* litigation. Mot. 8 (citing *In re Nalle Plastics Family Ltd. Partnership*, 406 S.W.3d 168 (Tex. 2013); *Worldwide Asset Purchasing, L.L.C. v. Rent-A-Ctr. E., Inc.*, 290 S.W.3d 554 (Tex. App. 2009)). Those cases miss the mark because the contract damages sought here are distinct from the "fees . . . incurred in prosecuting [Plaintiffs'] breach of contract claim." *In re Nalle*, 406 S.W.3d at 171. Instead—reflecting the distinction the Texas Supreme Court recognized in *In re Nalle*—they are the attorney's fees from the "*underlying* suit" in the Southern District of New York, such that "those fees may properly be included in a judge or jury's compensatory damages award." *Id.* at 175. Consistent with that holding, courts around the country have held that attorney's fees from enforcing a valid forum selection clause are available as damages in a breach of contract claim. *See, e.g.*, *Vianet*, 2016 WL 4368302, at *9; *Namdar*, 340 A.3d at 1195; *Rogovsky*, 2016 WL 6432620, at *3.

Regardless, the amount-in-controversy is satisfied based on Plaintiffs' attorney's fees incurred in prosecuting *this* action, which are recoverable under Texas statute and which apply to the amount-in-controversy under Fifth Circuit law. Dubinsky Decl., ¶ 4; *supra* 11; *Rocha,* 2018

WL 2925135, at *2 (amount-in-controversy satisfied because "anticipate[d] . . . attorneys' fees in this case" pushed amount over $75,000).

***There is no "grossly disproportionate" test.*** Defendant next says the amount-in-controversy is not met because "[a] fee demand grossly disproportionate to the underlying claim cannot be credited." Mot. 9. She cites no case saying a court may conduct a "grossly disproportionate" review of the amount-in-controversy. Anyway, the damages here are not grossly disproportionate. Defendant can hardly be surprised that her failed campaign to forum shop and bring claims in New York in breach of the xAI and X Terms of Service would lead to a venue fight, and that the damages arising therefrom (including attorney's fees in enforcing the breach) would exceed $75,000. Defendant's decision to file suit in the wrong forum required extensive motions practice and multiple conferences with the court, *see* SDNY Dkts. 13, 17, 21, 25, 41, 61, 65, 89, 91, some of which was necessitated by Defendants' seriatim, supplemental filings, *see* SDNY Dkts. 84, 94, 97.

Defendant's unsupported (and denied) allegations of "manufactur[ing]" jurisdiction or "hiring overpriced lawyers" are not a basis for establishing as a "legal certainty that the claim is really for less than the jurisdictional amount." *Allen*, 63 F.3d at 1335; *see Wilson v. Hibu Inc.*, 2013 WL 5803816, at *3 (N.D. Tex. Oct. 28, 2013) ("[I]n today's world, it does not take much to exceed $75,000. . . . [W]hen the court also considers the claims made, the request for and various categories of compensatory damages, past and future, . . . it has no pause in concluding that the amount in controversy more likely than not exceeds $75,000.").

***X Corp***. Finally, in passing and without citing any case law, Defendant asserts that X Corp. "cannot recover losses it did not sustain, even in the event that X.AI, LLC and/or X.AI Holdings Corp. are found to have some redressable injury." Mot. 9. That argument fails for two

reasons. *First*, X brings breach of contract and declaratory judgment claims, and X is entitled to recover attorney's fees in this lawsuit if it succeeds in proving one or both of those claims, which, as explained, independently satisfies the amount in controversy. *Supra* 11; Tex. Civ. Prac. & Rem. Code § 37.009.

*Second*, that aside, under 28 U.S.C. § 1367(a) the Court may exercise supplemental jurisdiction over X Corp.'s claims if a co-plaintiff meets the amount-in-controversy requirement, which is satisfied here by the xAI plaintiffs, both of whom are defendants in the New York Lawsuit. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566 (2005) ("[T]he threshold requirement of § 1367(a) is satisfied in cases, like those now before us, where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy."); *Caraway v. Mandella*, 2021 WL 3475564, at *2 (N.D. Tex. Aug. 6, 2021) (same).

**B. Plaintiffs Have Article III Standing**

"Article III standing requires a plaintiff to have 'suffered an injury in fact,' show 'a causal connection' between the injury and the conduct at issue, and the injury must be redressable by the court." *Latitude Sols., Inc. v. DeJoria*, 922 F.3d 690, 695 (5th Cir. 2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Defendant appears to argue Plaintiffs do not have Article III standing here because forum-selection clauses can be enforced through a motion to transfer venue. *See* Mot. 10. But that argument fails because, when a contract is breached, there "is a sufficient injury for standing purposes." *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022). And the Court can "remedy" that breach "through damages and specific performance (redressability)." *RLI Ins. Co. v. Roberts*, 819 F. App'x 227, 229 (5th Cir. 2020).

Defendant further asserts that because a remedy for a breach of a forum selection clause is a motion to transfer the case to the proper forum, it would be unfair to award damages in this

instance. Mot. 10–12. But not a single case she cites says that damages are *unavailable* for breach of a forum selection clause; instead they only discuss how a defendant ***may*** "enforce" a forum-selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013) ("appropriate way to enforce a forum-selection clause"); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 n.6 (5th Cir. 2016) (same); *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 247 (5th Cir. 2023) (same); *HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 805 (Tex. App. 2018) (same); *Xia v. Floyd*, 638 S.W.3d 821, 825 (Tex. App. 2021) (similar); *In re Nationwide Ins.*, 494 S.W.3d 708, 712 (Tex. 2016) (discussing standards for enforcement). Many courts have recognized that (as here) securing a transfer may not make the non-breaching party whole where it has had to expend money to vindicate its contractual rights, and therefore that contract damages are available for breach of a forum selection clause. *See Vianet*, 2016 WL 4368302, at *9; *Namdar*, 340 A.3d at 1195; *Rogovsky*, 2016 WL 6432620, at *3.

Defendant invokes non-binding *dicta* from *Namdar* and a law review article[4] for the principle that it is categorically improper to award damages for breach of forum selection clauses in the case of consumer contracts. Mot. 11–12. This fails for multiple reasons. *First*, this contention has nothing to do with Article III jurisdiction. As established, Plaintiffs have been injured and a successful outcome here would redress their injury. Whether damages can be awarded as a remedy, or can be awarded but should be remitted in light of any "injustice" (which Plaintiffs deny has occurred here), is a question for another day.

*Second*, *Namdar* itself explains why money damages are in fact necessary here: while "injunctive relief . . . provides forward-looking relief," "[i]t does not address the damages

[4] John F. Coyle & Tanya Monestier, *Limits on Damages for Breach of a Forum Selection Clause*, 66 Santa Clara L. Rev. 94 (2026).

suffered before obtaining that relief." 340 A.3d at 1202. The award of *damages* for breach of the forum-selection clause thus "give[s] complete and full relief." *Id.* at 1197 (quoting *Tri State Mall Assocs. v. A. A. R. Realty Corp.*, 298 A.2d 368, 371 (Del. Ch. 1972)); *see also White Knight Dev., LLC v. Simmons*, 718 S.W.3d 203, 209–10 (Tex. 2025), *reh'g denied* (Sept. 5, 2025) ("[A] monetary award may be appropriate when specific performance alone does not restore the nonbreaching party to the position it would have occupied if the contract had been performed *at the time it was to be performed*." (emphasis in original)). In short, even success on the transfer motion "did not make [Plaintiffs] whole." *Namdar*, 340 A.3d at 1197. Thus, money damages are available (and necessary) to redress Plaintiffs' injury.

*Third*, Defendant's categorical rule would contravene Texas law by requiring the Court to read a limitation of liability clause into the contract where there is none. *Mission Techs. Inc. v. STMicroelectronics Inc.*, 2024 WL 150504, at *3 (N.D. Tex. Jan. 11, 2024) ("Texas has a 'strong public policy [interest] in favor of preserving the freedom of contract,' and thus has a strong public policy interest in enforcing contracts as written." (quoting *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 812 (Tex. 2012))). That would be error.

### C. Personal Jurisdiction Exists

Plaintiffs pleaded a prima facie basis for personal jurisdiction by alleging that "[t]he Court has personal jurisdiction over Defendant by virtue of her agreement to litigate all disputes with xAI, X Corp., and their affiliates in this State." FAC ¶ 18; *see id.* ¶ 35 ("[Y]ou consent to personal jurisdiction" in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas and "waive any objection as to inconvenient forum."); *id.* ¶ 53 (same); *id.* ¶ 54 (similar). Defendant's personal jurisdiction argument is simply a merits argument about the validity of the forum-selection clauses in the Terms of Service and has nothing to do with personal jurisdiction. Mot. 18–19. If she is bound to the xAI and X Terms of

Service (as Plaintiffs intend to prove), this Court will have personal jurisdiction over her. *See Am. Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 381 (N.D. Tex. 1996).

## II. Plaintiffs Have Adequately Stated Claims

Defendant's contentions for dismissal are arguments about the ultimate merits dressed up as Rule 12(b)(6) points and should be rejected.

### A. Breach of Contract (Counts I and II)

"The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Plaintiffs properly plead each element, both as to xAI's Terms of Service (Count I) and X's Terms of Service (Count II). "Thus, Plaintiffs have adequately alleged the existence of a contract, and that Defendant breached the contract." *Lopez v. JP Morgan Chase Bank, N.A.*, 2012 WL 2726762, at *2 (W.D. Tex. July 9, 2012).

#### *1. xAI Terms of Service (Count I)*

Valid Contract. Plaintiffs plead the existence of a valid contract between xAI and Defendant. "Defendant signed up for an xAI account on December 10, 2024," and she "manifest[ed] assent to the xAI Terms of Service" at that time. FAC ¶¶ 25–26. Further, at the time Defendant signed up for her xAI account, and up to the present, users are presented with a webpage, when creating an xAI account, that states: "By continuing, you agree to xAI's Terms of Service and Privacy Policy." In addition, no user may create an xAI account without being taken to this webpage. *Id.* ¶¶ 27–30. When Defendant created her xAI account, xAI's Terms of Service expressly provided that Defendant's "continued use of the Service after any change to

these Terms constitutes your acceptance of the new Terms of Service," *id.* ¶ 31, and Defendant continued to use xAI's Service after December 10, 2024, *id.* ¶ 33.

Performance. Plaintiffs adequately plead that they "performed under the agreement by providing [their] services." *Electrostim Med. Services v. Health Care Service Corp.*, 614 F. App'x 731, 739 (5th Cir. 2015). Plaintiffs provided xAI's Service to Defendant, who used the Service (Grok) "as recently as January 2026." FAC ¶ 33.

Breach. Defendant breached the xAI Terms of Service. Plaintiffs plead that, "[a]t the time Defendant most recently used [the] Service," the xAI Terms of Service required that "all disputes related to these Terms, the Service . . . related to or arising from any Content . . . shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States." *Id.* ¶ 35. Defendant breached that provision by bringing a lawsuit in New York relating to or arising from xAI's Content or Services. *Id.* ¶¶ 5–7, 55–66.

Damages. Plaintiffs suffered damages due to Defendant's breach of the xAI Terms of Service, including fees expended in seeking to transfer the New York Lawsuit and in prosecuting this action. *Id.* ¶¶ 7, 66; *see supra* Section I.A.

*2. X Terms of Service (Count II)*

Valid Contract. Plaintiffs also plead the existence of a valid contract between X Corp. and Defendant. The X Terms of Service in effect from November 15, 2024, to January 15, 2026, provided that a user "form[s] a binding contract" if she "[1] accept[s] these Terms and/or [2] us[es] the Services, which constitutes acceptance of these Terms." *Id.* ¶¶ 40–41 & Ex. B. Defendant bound herself to Version 20 both ways. *First*, X sent Defendant and "in-app prompt[] notifying [her] of" Version 20," *id.* ¶ 44, and Defendant "[c]licked" the "Got It" button on

October 24, 2024, thereby assenting to Version 20, *id.* ¶¶ 46–47. *Second*, Defendant used X's Service multiple times after November 15, 2024, the effective date of Version 20. *Id.* ¶ 52.[5]

Similarly, Version 21, like Version 20, says a user "form[s] a binding contract" if she "[i] accept[s] these Terms and/or [ii] us[es] the Services, which constitutes acceptance of these Terms." *Id.* ¶ 42–43 & Ex. C. Again, Defendant bound herself to Version 21 both ways. *First*, Defendant accepted those Terms and formed a binding contract with X when she received an in-app prompt on X and clicked the "Got It" button. *Id.* ¶¶ 46–49. *Second*, Defendant used X's Service after January 15, 2026, the effective date of Version 21. *Id.* ¶ 52.

Performance. X. Corp. performed by providing services to Defendant, and Defendant accessed and used the X platform before and after January 15, 2026. *Id.* ¶ 52.

Breach. Plaintiffs plead that Defendant breached both versions of the X Terms of Service by bringing suit in New York, not Texas. Both versions' forum-selection clauses encompass "all disputes . . . related to or arising from any Content (whether your or others' Content), or your or others' use of the Services." *Id.* ¶¶ 35, 54. The New York Lawsuit falls under this clause because her claims are a "dispute" about "Content" on X and/or about other X users' use of X "Services." *See, e.g.*, *id.* ¶ 62. Moreover, the xAI plaintiffs here are expressly designated third-party beneficiaries under Version 21 and thus may enforce the forum clause. *Id.* ¶ 76.

Damages. Plaintiffs suffered damages arising out of this breach. *Id.* ¶¶ 7, 66.

*3. Defendant's arguments fail*

X.AI. Defendant argues that Plaintiffs fail to state a claim for breach of contract as to xAI on the ground that Plaintiffs "provide no particularized factual allegations about what steps [she] herself took or when she did so" to create her xAI account in December 2024. Mot. 13–14.

---

[5] Defendant's X page is a public record, of which the Court may take judicial notice. *See* @stclairashley, X, https://x.com/stclairashley; *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 639 n.2 (5th Cir. 2005).

Wrong. Plaintiffs allege that "Defendant signed up for an xAI account on December 10, 2024, through her X account," and that she necessarily agreed to xAI's Terms of Service during the xAI account creation process. FAC ¶¶ 25–32. Further, those Terms of Service provided that "'[y]our continued use of the Service after any change to these Terms constitutes your acceptance of the new Terms of Service,'" *id.* ¶ 31, and Defendant used xAI's Service (Grok) after December 10, 2024, *id.* ¶ 33. Thus, Defendant's assertion that "the Terms that were in effect when [she] allegedly created her account . . . appear nowhere in the FAC" (Mot. 14) is baseless (as Plaintiffs quoted them directly), as is her suggestion that dismissal is proper because those Terms of Service were not attached to the FAC. *See Euramerica Gas & Oil Corp. v. Britlind Energy LLC*, 2018 WL 11356913, at *2 n.1 (N.D. Tex. Apr. 20, 2018) ("Contrary to Defendants' argument . . . Plaintiff need not attach the contracts to the Complaint."); *Perrin v. Smith*, 2013 WL 12190190, at *2 (S.D. Tex. Apr. 9, 2013) ("The [FRCP] do not require Plaintiff alleging breach of contract to attach a copy of the contract in question to his Complaint.").

X Corp. Defendant also argues Plaintiffs fail to state a claim for breach of contract as to X Corp., but her contentions again are meritless. Defendant argues that Plaintiffs failed to plead her assent to the X Terms of Service on the ground that Plaintiffs did not plead she used X after January 15, 2026. Not so. *See* FAC ¶ 52 ("Defendant's @StClairAshley X account used and/or accessed the X platform multiple times before January 15, 2026, as well as on or after that date."). As Judge Carter held—which this Court can take judicial notice of, *supra* n.1—Defendant "accessed the X platform multiple times between January 16, 2026, and February 3, 2026," which "is sufficient to establish [that she] manifested assent." SDNY Dkt. 96 at 8.

In any event, "[b]y clicking the 'Got It' button on the in-app prompt on December 16, 2025, Defendant assented to the X Terms of Service that became effective on January 15, 2026."

FAC ¶ 49. Indeed, as Judge Carter ruled, her "clicking on the 'Got It' button on December 16, 2025" was "sufficient to put [her] on inquiry notice of the updated TOS." SDNY Dkt. 96 at 7.

Her remaining arguments contest the allegations supporting Plaintiffs' breach of contract claims. *See* Mot. 16 (arguing "Plaintiffs point to no language that would indicate St. Clair could reasonably have foreseen that X intended to include xAI, in all its corporate iterations, as a protected party thereunder."); *id.* 16–18 (arguing the New York Lawsuit is not governed by the terms of service). These arguments are not proper on a motion to dismiss. *See Highland Cap. Mgmt., L.P. v. Bank of Am., Nat. Ass'n*, 698 F.3d 202, 208 (5th Cir. 2012) ("Bank of America may argue that the parties never agreed on all material terms, but that is an issue of fact, and it should not be a basis for dismissing the claim." (citing *Red Oak Fund, L.P. v. MacKenzie Partners, Inc.,* 90 A.D.3d 527, 528 (1st Dep't 2011) ("Defendant's claim that there was no meeting of the minds . . . is merely another way of disputing plaintiff's allegations regarding the parties' agreement."))); *Landry v. IRX Therapeutics, Inc.*, 2017 WL 8161163, at *6 n.3 (W.D. Tex. Feb. 24, 2017) ("Defendant's counsel's arguments went to the merits of the breach of contract claim and are not a sufficient basis . . . to dismiss."). In any event, Judge Carter rejected many of these arguments already. *See* SDNY Dkt. 96 at 4–13.

### B. The Arguments for Dismissing the DJ Counts (III and IV) Fail

Finally, Defendant's assertion that this Court should exercise its discretion and dismiss the declaratory-judgment counts turns the usual considerations for dismissal on their head.

Forum shopping is one consideration in deciding whether to dismiss a declaratory-judgment count, but it is not Plaintiffs who have "engaged in forum shopping." *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 (5th Cir. 1994). Rather, it is Defendant who flagrantly forum shopped, suing in New York in the teeth of her promises to litigate in Texas. So her "choice of forum merits

no weight." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 51 (2013). Accordingly, this factor weighs against dismissal; there are no "possible inequities in allowing the declaratory [P]laintiff[s] to gain precedence in time or to change forums." *Trejo*, 39 F.3d at 591.

The remaining *Trejo* factors are in accord. As Defendant admits, federalism concerns are irrelevant as "there is no parallel state-court proceeding." Mot. 19. She points to a risk of inconsistent rulings, but any such risk is a result of Defendant's breach. To be sure, the declaratory judgment counts and the breach-of-contract counts overlap. But "even if the declaratory judgement action does share the same operative factual and legal issues as some other cause of action," "the existence of another adequate remedy does not preclude . . . declaratory relief." *Republic Servs., Inc. v. Texas Ecological Servs.*, 118 F. Supp. 2d 775, 776 (S.D. Tex. 2000).

Nor was there an improper anticipatory suit. When Defendant notified Plaintiffs that she intended to violate her agreements by suing in New York instead of here, Plaintiffs acted consistently with their contractual rights and brought suit for breach here—in the contractually-required forum. *See Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 391 (5th Cir. 2003) ("Federal declaratory judgment suits are routinely filed in anticipation of other litigation. [This] is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'").

## CONCLUSION

The Court should deny Defendant's motion to dismiss.

Respectfully submitted,

*/s/ Charles W. Fillmore*
**BROWN PRUITT WAMBSGANSS DEAN FORMAN & MOORE, P.C.**
Charles W. Fillmore
Texas State Bar No. 00785861
201 Main Street, Suite 700
Fort Worth, TX
Telephone: (817) 333-4888
cfillmore@brownpruitt.com

*/s/ Michael S. Shuster*
**HOLWELL SHUSTER & GOLDBERG LLP**
Michael S. Shuster
Daniel M. Sullivan
Gregory J. Dubinsky
Brian T. Goldman
425 Lexington Ave., 14th Floor
New York, NY 10017
Telephone: (646) 837-5151
mshuster@hsgllp.com
dsullivan@hsgllp.com
gdubinsky@hsgllp.com
bgoldman@hsgllp.com

**CERTIFICATE OF SERVICE**

I, Brian T. Goldman, an attorney, hereby certify that on August 10, 2026, I caused a copy of the foregoing to be served via the Court's ECF system, which sent a copy of this filing to all counsel of record.

*/s/ Brian T. Goldman*
Brian T. Goldman