**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | |
|---|---|
| X.AI LLC, ET AL.,<br>*Plaintiffs*,<br>*v.*<br>ASHLEY ST. CLAIR,<br>*Defendant* | Case No. 7:26-CV-00005-O |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HER MOTION TO DISMISS**

Defendant Ashley St. Clair ("St. Clair" or "Defendant") respectfully submits this memorandum of law in further support of her Motion to Dismiss.

**I. PLAINTIFFS HAVE NOT ESTABLISHED SUBJECT MATTER JURISDICTION.**

This Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiffs have not met the amount-in-controversy requirement.

**a. Fees incurred in the New York litigation do not establish the amount in controversy.**

The cases Plaintiffs cite in support of their contention that attorneys' fees incurred in prior litigation constitute "cognizable contract damages," Pl. Opp. at 11, are materially distinguishable. Each involved litigation that had already occurred or an independent statutory or contractual basis for recovering fees incurred in that litigation. *Vianet Grp. PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2016) (prior state court action abated); *Watson v. Provident Life & Acc. Ins. Co.*, No. 3:08-CV-2065-G, 2009 WL 1437823, at *5 (N.D. Tex. May 22, 2009) (statutory entitlement to attorneys' fees); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1252 (5th Cir. 1998) (same); *Cupples Co. Mfrs. v. Farmers & Merchants State Bank*, 390 F.2d 184, 184 (5th Cir. 1968) (same). Neither circumstance exists here.

Here, by contrast, Plaintiffs seek to recover fees from litigation that had not yet occurred when this action was filed. Indeed, this action was an anticipatory filing that preceded the alleged "prior litigation" in New York. Moreover, the ongoing New York litigation is far from over. A Writ of Mandamus is currently pending before the Second Circuit. Pl. Opp. 7. Second, Plaintiffs identify no contractual, statutory, or other exception to the American Rule—requiring a litigant bear its own costs—that would permit recovery of attorneys' fees incurred in the New York litigation. The Terms of Service contain no fee-shifting provision, and Section 38.001 of the Texas Civil Practice and Remedies Code provides no basis for recovery because it permits fees in certain

breach-of-contract actions only when the claimant both prevails and recovers damages, neither of which has occurred here. The New York action is not a breach-of-contract action, remains pending, has produced no prevailing party, and has resulted in no damages award. Plaintiffs have no basis under Texas law to recover the attorneys' fees they incurred in that litigation. Plaintiffs nevertheless contend that damages may be available for breach of a forum-selection clause, citing *Namdar v. Fried* and *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.* Pl. Opp. 18. Both cases, however, arose in materially different postures, and neither is binding on this Court. In *Namdar*, the court addressed damages after the non-permitted forum had already dismissed the out-of-forum action. 340 A.3d 1176, 1184 (Del. Ch. 2025). By contrast, Plaintiffs commenced this anticipatory action before the New York lawsuit for which they seek fees had been filed (after receiving notice, as required by New York law, of Defendant's intent to file). Moreover, the New York action is still pending. St. Clair does not concede that an unfavorable ruling on her mandamus petition would establish Plaintiffs' entitlement to damages in this action or resolve the merits of this action in their favor—especially where the extensive court-driven briefing in New York and the Second Circuit's still-pending stay demonstrate the reasonableness of St. Clair's belief that the place of her injury was a proper forum to file. The belief is all the more reasonable in that Judge Carter's ultimate reason for transferring the case relied on a novel expansion of the law to enforce a non-party's forum selection clause. Moreover, Plaintiffs cannot rely on subsequent developments in separate litigation to retroactively establish a claim for damages that was not adequately pleaded when this action commenced. *Rogovsky* is likewise distinguishable. There, the court reaffirmed that a party "may pursue the remedy of specific performance or legal damages, but may not pursue both." 2016 WL 6432620, at *2 (S.D. Ind. Oct. 31, 2016). Here, Plaintiffs seek both: they continue to pursue transfer-related relief in New York while simultaneously claiming damages for breach

in Texas. *Vianet*, the only Texas authority Plaintiffs cite, is no more helpful to them. There, the prior litigation had already concluded, and the court questioned whether a damages remedy is available under Texas law to a party who "possibly could obtain other traditional remedies" for breach of a forum-selection clause, such as a transfer. *Vianet Grp.*, at *4 n6.

**b. Fees incurred in this litigation do not establish the amount in controversy.**

Plaintiffs assert that "the amount-in-controversy requirement is satisfied based on Plaintiffs' attorneys' fees incurred in prosecuting this action." Opp. 15. This is inaccurate.

Plaintiffs have cited no Texas cases holding that attorneys' fees incurred to defend or prosecute an action are recoverable in that same action as actual damages. For good reason: no such cases exist. Texas law is clear that attorneys' fees incurred in prosecuting a breach-of-contract action are not actual damages sufficient to sustain such a claim. *TenPearls, LLC v. Medulla Int'l, LLC*, No. 4:22-CV-550-SDJ, 2023 WL 3292883, at *8 (E.D. Tex. May 5, 2023) ("Because the Texas Supreme Court would likely hold that attorneys' fees do not constitute an element of a breach-of-contract claim under Texas law…"); *accord Shastry v. U.S. Bank Nat'l Ass'n as Tr. to Wachovia Bank Nat'l Ass'n*, No. 3:16-CV-3335-G-BN, 2021 WL 849015, at *12 (N.D. Tex. Feb. 11, 2021), report and recommendation adopted sub nom. *Shastry v. U.S Bank Nat'l Ass'n as Tr. to Wachovia Bank Nat'l Ass'n*, No. 3:16-CV-3335-G-BN, 2021 WL 842132 (N.D. Tex. Mar. 5, 2021); *Smith v. Wells Fargo Bank N.A.*, No. 3:19-CV-02406-X-BT, 2021 WL 3935276, at *4 (N.D. Tex. Aug. 18, 2021), report and recommendation adopted sub nom, *Smith v. Wilson*, No. 3:19-CV-02406-X-BT, 2021 WL 3930723 (N.D. Tex. Sept. 2, 2021); *Brinkley v. PennyMac Loan Servs., LLC*, No. 3:18-CV-383-G-BN, 2018 WL 6004309, at *11 (N.D. Tex. Oct. 22, 2018), report and recommendation adopted, No. 3:18-CV-0383-G (BN), 2018 WL 5995444 (N.D. Tex. Nov. 15, 2018); *Vianet Grp.*, at *9. The one case Plaintiffs cite in support of their position is easily

distinguishable. *U.S. Bank, N.A. v. Rocha* involved a loan agreement secured by real property where the agreement entitled the lender to reasonable attorneys' fees. 2018 WL 2925135 (W.D. Tex. June 11, 2018). Here, by contrast, Plaintiffs identify no provision in the any of the proffered Terms of Service which would entitle them to attorneys' fees.

## II. PLAINTIFFS HAVE NOT STATED ANY PLAUSIBLE CLAIM FOR RELIEF.

### a. Plaintiffs do not state a claim for breach of contract as to xAI.

The existence of a valid contract is a threshold requirement for any breach of contract claim. Texas courts recognize a spectrum of online agreements, including clickwrap, sign-in-wrap, and browsewrap agreements. Regardless of the particular format, however, online agreements are governed by ordinary principles of Texas contract law, including offer, acceptance, and mutual assent. *StubHub, Inc. v. Ball*, 676 S.W.3d 193, 199–200 (Tex. App. 2023). In this context, enforceability turns on whether notice of the terms and conditions was reasonably conspicuous to the user. *Id.* at 201. It is the plaintiff's burden to provide a "sufficiently clear, direct, and positive" description of the user registration process to "conclusively establish as a matter of law" that the defendant assented to the terms. *Id.*

Here, the FAC fails to allege facts sufficient to establish that Defendant assented to xAI's Terms of Service, because Plaintiffs' general description of the xAI account-creation process in the FAC is both incomplete and not particularized to Defendant.

First, Plaintiffs fail to plead in the FAC how users purportedly manifest assent to xAI's Terms of Service. They allege that users may create an xAI account in several ways; that users are presented with a webpage when they create an account; and that "[n]o one may create an xAI account without being taken to the webpage." FAC ¶¶ 24, 27, 29. Plaintiffs attach a screenshot of said webpage, which displays the statement "By continuing you agree to xAI's Terms of Service

and Privacy Policy" at the very bottom, beneath a blank email field, a submit button, and three other links. FAC ¶ 30. However, Plaintiffs' description of this account creation process fatally omits when, and through what action, a prospective user allegedly manifests assent to its Terms. Courts that have enforced online agreements have required evidence describing the assent process in substantially greater detail than Plaintiffs provide here. *See StubHub* at 202 (citing *JLR Glob., LLC v. PayPal Holding Co.*, No. 4:22-CV-559, 2023 WL 2527158, at *4 (E.D. Tex., Mar. 15, 2023) (mem. op. & order) ("PayPal has presented a declaration of an employee, who established that it would have been impossible for the two relevant PayPal accounts to have been created without affirmatively clicking and agreeing to the User Agreement.")); *accord Johnson v. Sw. Recovery Servs., Inc.*, No. 3:22-CV-242-X-BH, 2023 WL 1944127, at *1–2, 7 (N.D. Tex. Jan. 24, 2023); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718–19 (N.D. Tex. 2013).

Second, the FAC alleges no particularized facts regarding Defendant's assent. The only allegation specific to Defendant on this point is the legal conclusion that "[t]o sign up for an xAI account, Defendant was required to manifest assent." FAC ¶ 26. But Defendant's assent is the very issue Plaintiffs must support with specificity. Courts evaluating a motion to dismiss do not credit bare legal conclusions, which are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Plaintiffs do not describe or provide screenshots of the process Defendant allegedly used to create an xAI account through X. FAC ¶ 25. Instead, Plaintiffs attach only a screenshot of a webpage with a blank email field for users creating an account by email. FAC ¶ 30. The FAC does not describe the interface that Defendant herself actually encountered, or any action she personally took that would communicate her assent. *See StubHub* at 201–02 ("If the account creation process in 2012 required [defendant] to accept the User Agreement by affirmatively clicking a button confirming his acceptance of the terms, then the assertions in the

declarations should be clearer and more specific in order to demonstrate [defendant]'s unambiguous assent as a matter of law."). By contrast, Plaintiffs did provide this type of detail in describing Plaintiff's X account. FAC ¶ 46 ("Defendant clicked the "Got It" button on the in-app prompt she received in the X application"); ¶ 47 ("By clicking the "Got It" button in the an-app prompt on October 24, 2024 Defendant assented to the X Terms of Service that became effective on November 15, 2024."). Plaintiffs' lack of detail about Defendant's alleged xAI account creation and manifestation to xAI's Terms of Service, including their failure to show what she saw during the sign-in process and what button, if any, she allegedly clicked to create an account precludes a finding of an enforceable contract as to xAI's Terms of Service.

Even assuming *arguendo* that the email sign-up webpage Plaintiffs provide, FAC ¶ 30, is relevant to whether Defendant is bound by xAI's Terms of Service, it still would not establish assent. The webpage did not give reasonably conspicuous notice sufficient to bind Defendant because the phrase "[b]y continuing you agree to xAI's Terms of Service and Privacy Policy" appeared far from the relevant action items and outside the user's natural flow. The Northern District of California recently reviewed this very webpage and held that its absence of reasonably conspicuous notice meant a user could not unambiguously assent to its terms. *Skaggs v. X.AI, LLC*, No. 26-cv-04550-BLF (N.D. Cal. Aug. 13, 2026) (finding that neither the xAI sign-up screen nor the chat screen provided reasonably conspicuous notice sufficient to establish assent to the terms containing the forum-selection clauses, in part because the terms at the bottom of the interface were "buried" outside the area where a reasonable user would look, given that the user's "most obvious and natural next step" was to enter text into the query box).

Finally, the FAC is missing a critical piece of information: the forum-selection clause in the xAI Terms of Service that Plaintiffs claim Defendant assented to in November 2024. Contrary

to Plaintiffs' opposition, this omission is directly relevant. Plaintiffs never allege that the November 2024 Terms of Service contained the specific forum-selection clause they now seek to enforce. Instead, they rely on a purported continuing use provision that allegedly bound Defendant to any future versions of the Terms. FAC ¶ 31. But Plaintiffs provide no allegations explaining when or how Defendant was notified of subsequent changes to the Terms, whether the forum-selection clause was added or modified in a later version, or how Defendant allegedly assented to those changes. *See, e.g., StubHub*, 676 S.W.3d at 203 (conducting discrete notice and assent analyses for both the initial set of terms at time of contracting and subsequent versions of those terms). The FAC's treatment of X underscores this deficiency. There, Plaintiffs provide detailed allegations regarding the relevant provisions of X's Terms of Service, the notice allegedly provided to Defendant as to those terms and any changes thereto, and the specific actions Defendant allegedly took to manifest assent to each version. FAC ¶¶ 40–54. Yet for xAI, Plaintiffs omit these critical facts. Although Plaintiffs need not attach the full contract, they must plausibly identify the terms allegedly agreed upon and when to establish a breach. They have not done so.

**b. Plaintiffs do not state a claim for breach of contract as to X.**

Even assuming *arguendo* that Version 21 of X's Terms of Service were binding on Defendant, the FAC identifies no injury that X itself suffered as a result of Defendant's purported breach, separate from whatever damages xAI claims to have incurred defending the New York action. Unlike xAI, X is not a party to the New York action and never has been. Thus, there is no basis to infer that it incurred losses as a result of that litigation, and the FAC identifies no such injuries. Because Texas law requires an award of actual damages to compensate the plaintiff for the injury caused by the breach, X cannot recover based on losses incurred by xAI.

**c. xAI cannot enforce X's Terms of Service as a third-party beneficiary.**

Contrary to Plaintiffs' Opposition, whether someone is a third-party beneficiary of a contract and can sue for the breach of its terms is a question of standing properly addressed in a motion to dismiss. *Allen v. Texas Children's Health Plan*, 649 S.W.3d 830, 834 (Tex. App. 2022). In Texas, there is a presumption against conferring third-party beneficiary status on noncontracting parties. *Id.* at 835; *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 583 (Tex. 2023). Unless the intent to confer a direct benefit upon a third party was clearly and fully spelled out at the time of contracting, any attempted enforcement by a third party claiming beneficiary status must be denied. *Allen* at 835. A noncontracting party suing for breach of contract as a third-party beneficiary bears the burden of demonstrating this status, by pointing to sufficiently "clear and unequivocal language" to demonstrate such an intent. *Id.* No such language has been identified here, so Plaintiffs have failed to meet that burden.

Assuming *arguendo*, that Defendant became bound by Version 21 of X's Terms of Service and its forum-selection clause is applicable to the New York litigation, Plaintiffs' assertion that the xAI entities are "expressly designated third party beneficiaries of the X Terms of Service," FAC ¶ 76, is contradicted by the plain language of the terms. FAC ¶ 54. Version 21 states: "The choice of law and forum selection provisions of this paragraph shall also extend to disputes involving our U.S. corporate affiliates, who are intended third party beneficiaries of this paragraph." FAC ¶ 54. However, xAI does not appear on the list of "U.S. corporate affiliates" that is linked in the Terms, even though two affiliated companies are explicitly listed: Vine Archive and TwitPic Archive. FAC Ex. B, Dkt. 29-2 at 4; FAC Ex. C, Dkt. 29-3 at 4 (linking to https://help.x.com/en/rules-and-policies/x-services-and-corporate-affiliates). Nor is xAI even mentioned in the entirety of the terms. FAC Ex. B, Dkt. 29-2; FAC Ex. C, Dkt. 29-3. The term

"U.S. corporate affiliates" is not sufficiently clear and unequivocal to demonstrate such intent, especially when this term is defined elsewhere in the Terms as expressly not including xAI.

**d. This Court should also dismiss Plaintiffs' requests for declaratory judgment.**

As an initial matter, if this Court finds that Plaintiffs' breach of contract claims for damages fail, then its declaratory judgment claims must also be dismissed. *Lochner v. Truist Bank*, No. 4:25-cv-00506-P, 2026 WL 1783216, at *3 (N.D. Tex. June 22, 2026) ("As a procedural device that does not create any substantive rights or causes of action, a court cannot grant declaratory relief when there is no valid underlying claim."). Further, to the extent this Court may find that Plaintiffs have some valid underlying claim, Plaintiffs' Opposition offers no reason for this Court to adjudicate declaratory claims concerning the enforceability of the forum-selection clauses in xAI's and X's Terms of Service when the same dispute is now pending before the Second Circuit.

District courts are not obligated to exercise jurisdiction over declaratory judgment actions. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 389 (5th Cir. 2003) (*citing St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)). Here, the parties are litigating the enforceability of the xAI and X Terms of Service before the Second Circuit. Permitting Plaintiffs to maintain parallel federal litigation in Texas concerning the same contractual questions needlessly risks producing inconsistent rulings, undermines judicial economy, and will result in piecemeal resolution of issues that call for a uniform result—the very harms the Declaratory Judgment Act is designed to prevent.

Plaintiffs' reliance on *Republic Servs., Inc. v. Texas Ecological Servs.*, 118 F. Supp. 2d 775 (S.D. Tex. 2000) is misplaced. That decision holds only that the availability of another adequate remedy does not categorically bar declaratory relief. It does not require a district court to exercise declaratory jurisdiction when the same dispute is already pending in another federal court. The relevant question is not whether Plaintiffs could seek declaratory relief in theory, but whether this

Court should exercise its discretion to hear their claims in a second federal proceeding while the same dispute is before the Second Circuit. Under *Sherwin-Williams* and *Trejo*, it should not.

Finally, Plaintiffs' attempt to label Defendant a forum shopper requires assuming the very conclusion they ask this Court to reach: that the xAI and X Terms of Service required Defendant to litigate in Texas. When a plaintiff receives notice of a suit in another state and then rushes to file its own declaratory judgment action to avoid that litigation, FAC ¶¶ 55–57, that is textbook anticipatory filing justifying a court's refusal to exercise jurisdiction. *See Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*, No. H-07-637, 2007 WL 5186798, at *4 (S.D. Tex. Sept. 11, 2007) ("The Court declines to permit Plaintiffs to secure a more favorable forum by filing a declaratory judgment suit in Texas upon receiving notice that Grey Wolf intends to pursue litigation involving the same issues in Oklahoma."); *accord Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967).

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT.

Jurisdiction over St. Clair, a New York resident with no independent contacts with Texas, rests solely on the forum-selection clauses. Mot. 18–19. Plaintiffs do not dispute either point. Instead, Plaintiffs label the challenge "a merits argument," Opp. 19–20, which only confirms that personal jurisdiction here rises or falls entirely on whether Plaintiffs have adequately alleged enforceable forum-selection clauses. For the reasons argued in the foregoing, they have not. Therefore, there is no basis to exercise personal jurisdiction over St. Clair in this action.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the FAC with prejudice.

Dated: August 24, 2026

Respectfully submitted,

/s/ Carrie Goldberg
CARRIE A. GOLDBERG, *pro hac vice*
NAOMI LEEDS, *pro hac vice*
LAURA HECHT-FELELLA, *pro hac vice*
KATHERINE MCKAY, *pro hac vice*
C.A. Goldberg, PLLC
16 Court Street, 33rd Fl.
Brooklyn, New York 11241
646-666-8908 (phone)
carrie@cagoldberglaw.com

JAY BLASS COHEN
Texas Bar # 24069528
Blass Law, PLLC
4245 N Central Expy, #490
Dallas, TX 75205
(713) 664-4000 (phone)
jay@blasslaw.com

*Attorneys for Defendant Ashley St. Clair*