**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **X.AI LLC, ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:26-CV-00005-O** |
| | § | |
| **ASHLEY ST. CLAIR** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**OPINION & ORDER**

Before the Court are Defendant Ashley St. Clair's ("Defendant") Motion to Dismiss (ECF No. 48); Plaintiffs' Response (ECF No. 54); and Defendant's Reply (ECF No. 55). Having considered the Motion, briefing, and applicable law, the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 48).

## I. BACKGROUND[1]

Plaintiffs X.AI LLC and X.AI Holdings LLC, and X Corp. (collectively "Plaintiffs") operate various technologies, including the generative artificial intelligence ("AI" or "xAI") chatbot Grok and the social media platform X, formerly known as Twitter. Defendant created an X account on November 12, 2024, and subsequently created an xAI account on December 10, 2024. Plaintiffs allege that, by creating and continuing to use these accounts, Defendant agreed to the respective Terms of Service governing each platform.

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 29. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

Both the X and xAI Terms of Service contain forum-selection clauses requiring users to litigate certain disputes exclusively in Texas. Specifically, the November 4, 2025, xAI Terms of Service require parties to bring disputes, relating to use of xAI's services, in the United States District Court for the Northern District of Texas or state courts located in Tarrant County, Texas. Similarly, the November 15, 2024 and January 15, 2026 versions of the X Terms of Service contain forum-selection clauses requiring disputes relating to the X platform or its content to be litigated in Texas state or federal court. Plaintiffs alleged that Defendant assented to these provisions by continuing to use the platforms and acknowledging notifications concerning revisions to the X Terms of Service.

On January 14, 2026, Defendant's counsel notified Plaintiffs of Defendant's intention to seek a temporary restraining order against an xAI entity in New York state court. The following day, Defendant commenced an action in the Supreme Court of New York, alleging that Grok generated explicit images depicting Defendant and propagated those images on the X platform.[2] Plaintiffs subsequently removed the New York action to the United States District Court for the Southern District of New York. Plaintiffs alleged that Defendant's commencement and continued pursuit of that action violated the forum-selection clauses contained in both the xAI Terms of Service and the X Terms of Service.

Plaintiffs countersued with this action, asserting four claims against Defendant: (1) breach of contract or, alternatively, anticipatory repudiation of the xAI Terms of Service; (2) breach of contract under the X Terms of Service; (3) declaratory judgment concerning the validity and enforceability of the xAI Terms of Service; and (4) declaratory judgment concerning the validity and enforceability of the X Terms of Service and Defendant's alleged violation of both sets of

[2] The Court takes judicial notice of *Ashley St. Clair v. X.AI Holdings Corp., et al.*, No. 1:26-cv-00386 (S.D.N.Y.), *appeal pending*, No. 26-1777 (2d Cir.).

Terms of Service. Defendant subsequently filed the instant Motion to Dismiss, arguing that (1) the Court lacks subject-matter jurisdiction over Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1); (2) Plaintiffs have failed to state a claim upon which relief can be granted under Rule 12(b)(6); (3) the Court lacks personal jurisdiction over Defendant under Rule 12(b)(2); and (4) the Court should decline to exercise its discretionary jurisdiction over Plaintiff's declaratory judgment claims. The Motion has been briefed and is now ripe for the Court's review.

## II. LEGAL STANDARD

### A. Rule 12(b)(2) Personal Jurisdiction

Even where parties challenge the Court's subject-matter jurisdiction under Rule 12(b)(1) first, "[t]he Supreme Court has expressly approved of addressing personal jurisdiction before subject-matter jurisdiction[.]" *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018). Accordingly, the Court begins its analysis by addressing challenges to personal jurisdiction under Rule 12(b)(2). The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless they have meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). Jurisdiction may be "general," when a defendant has "continuous and systematic general business contacts" with the forum state or "specific," where a suit arises "out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416, 428 n.8) (1984). Where a plaintiff fails to establish a prima facie case of either general or specific jurisdiction, dismissal under Rule 12(b)(2) is warranted. *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 346–47 (5th Cir. 2019); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999) (affirming dismissal for lack of personal

jurisdiction where the Plaintiff failed to establish either general or specific jurisdiction over the defendant).

**B. Rule 12(b)(1) Subject-Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "Absent jurisdiction conferred by statute of the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking." *Tobacco & Wine, Inc. v. Cnty of Dallas*, 456 F. Supp. 3d 788, 791 (N.D. Tex. 2020) (citing *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Congress has conferred original jurisdiction on federal district courts over certain categories of cases, including cases arising under federal law and cases between citizens of different states that satisfy the requirements of diversity jurisdiction. *The Lamar Co., L.L.C. v. Mississippi Transp. Comm'n*, 976 F.3d 524, 528–30 (5th Cir. 2020), as revised (Sept. 24, 2020). Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Id*.

**C. Rule 12(b)(6) Failure to State a Claim**

Rule 8(a)(1) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to

dismiss the plaintiff's claims under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that "states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

**D. Discretionary Jurisdiction over a Declaratory Judgment Action**

Under the Declaratory Judgment Act, district courts have discretion in deciding whether to adjudicate a declaratory judgment action. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994). However, that discretion "is not unfettered." *Id.* (quoting *Travelers Ins. Co. v. Louisiana Farm Bureau Federation*, 996 F.2d 774, 778 (5th Cir. 1993). Accordingly, the Fifth Circuit has

identified several factors that "the district court must consider in determining whether to dismiss a declaratory judgment[.]" *Trejo*, 39 F.3d at 590. These factors include: (1) whether a pending state action exists "in which all matters in controversy may be fully litigated;" (2) "whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;" (3) "whether the plaintiff engaged in forum shopping;" (4) whether allowing the declaratory plaintiff to gain precedence in time or change forums would create inequities; (5) "whether the federal court is a convenient forum for the parties and witnesses;" (6) "whether retaining the lawsuit in federal court would serve the purposes of judicial economy;" and (7) "whether the federal court is being called on to construe a judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Id.* at 590–91.

## III. ANALYSIS

### A. Rule 12(b)(2) Personal Jurisdiction

Although Defendant's motion challenges the Court's subject-matter jurisdiction first,[3] the Court will begin by addressing Defendant's challenge to personal jurisdiction. *See Sangha,* 882 F.3d at 100. Defendant argues that Plaintiffs have failed to plausibly allege the existence of a binding agreement or Defendant's assent to the Terms of Service.[4] Defendant asserts that the forum-selection clauses cannot establish her consent to personal jurisdiction in Texas.[5] Defendant further claims that Plaintiffs have failed to allege an independent basis for exercising personal jurisdiction over her.[6] In response, Plaintiffs contend that they have established a prima facie basis

[3] Def.'s Mot. Dismiss 5, ECF No. 48.
[4] *Id.* at 18.
[5] *Id.*
[6] *Id.*

for exercising personal jurisdiction over Defendant because she agreed to litigate all disputes in Texas pursuant to the forum-selection clauses contained in the Terms of Service.[7]

The Court agrees with Plaintiffs. "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995). Defendant makes no effort to carry this burden by demonstrating that enforcement of the forum-selection clauses would be unreasonable. Moreover, a valid forum-selection clause may establish personal jurisdiction through consent, even in the absence of sufficient minimum contacts with the forum state. *Id*. Accordingly, Defendant's Motion to Dismiss under Rule 12(b)(2) is **DENIED**.

**B. Rule 12(b)(1) Subject-Matter Jurisdiction**

Defendant next argues that the Court lacks subject-matter jurisdiction because Plaintiffs' claims do not present a federal question and the amount in controversy does not satisfy the requirements of diversity jurisdiction under 28 U.S.C. § 1332.[8] Defendant further contends that Plaintiffs lack Article III standing because the proper mechanism for enforcing a forum-selection clause is a motion to transfer venue, rather than an independent action for breach of contract.[9]

In response, Plaintiffs contend that the Court has diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000.[10] Specifically, Plaintiffs assert that they seek contractual damages arising from attorney's fees incurred in enforcing the forum-selection clauses in the New York litigation, as well as attorney's fees incurred in prosecuting the present action.[11] Plaintiffs further argue that they have Article III standing because

[7] Pls.' Resp. 19, ECF No. 54.
[8] Def.'s Mot. Dismiss 5–9, ECF No. 48.
[9] *Id*. at 9–12.
[10] Pls.' Resp. 9–13, ECF No. 54.
[11] *Id*. at 10–12.

Defendant's alleged breach of the forum-selection clauses constitutes a cognizable injury that may be redressed through monetary damages.[12]

The Court agrees with Plaintiffs. Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interests and costs. Here, parties do not dispute that complete diversity exists.[13] Rather, Defendant challenges whether Plaintiffs have satisfied the amount-in-controversy requirement.[14] However, dismissal is warranted only where "it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (internal quotation omitted); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). Although the amount in controversy is determined at the time of filing, it may include reasonably anticipated future damages and recoverable attorney's fees. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003).

Plaintiffs seek to recover attorney's fees incurred in enforcing the forum-selection clauses in this suit.[15] Should Plaintiffs prevail in this case, recovery of attorney's fees would be authorized by statute. TEX. CIV. PRAC. & REM. CODE § 38.001(8). Where authorized by statute or contract, attorney's fees may be included in the amount in controversy. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Moreover, Plaintiffs have submitted evidence establishing that they have incurred more than $100,000 in attorney's fees in connection with this action.[16] Accordingly, Plaintiffs have sufficiently demonstrated that the amount in controversy

---

[12] *Id*. at 17–19.
[13] Def.'s Mot. Dismiss 9, ECF No. 48; Pls.' Resp. 9–13, ECF No. 54.
[14] Def.'s Mot. Dismiss 5–9, ECF No. 48.
[15] Pls.' Resp. 11, ECF No. 54.
[16] *Id*. at 28.

exceeds $75,000, and the Court cannot conclude to a legal certainty that their claims fall below that threshold.[17] The Court therefore finds that it has diversity jurisdiction under § 1332.

The Court likewise finds that Plaintiffs have sufficiently alleged Article III standing. A breach of contract may constitute an injury sufficient to establish standing. *Denning v. Bond Pharmacy, Inc*., 50 F.4th 445, 451 (5th Cir. 2022). "[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy, by suit or action at law, whenever that right is invaded." 2 William Blackstone, *Commentaries* *23. Here, Plaintiffs allege that Defendant's breach of the forum-selection clauses caused them to incur expenses enforcing their contractual rights.[18] Moreover, the availability of a motion to transfer venue does not necessarily foreclose recovery of contractual damages arising from such a breach. *See Vianet*, 2016 WL 4368302, at *9. Accordingly, Plaintiffs have sufficiently alleged injuries that are traceable to Defendant's conduct and redressable by this Court.

For these reasons, Defendant's Motion to Dismiss under Rule 12(b)(1) is **DENIED**.

### C. Rule 12(b)(6) Failure to State a Claim

Defendant asserts that Plaintiffs fail to state a claim for breach of contract because they have not adequately alleged that (1) Defendant assented to xAI's Term of Service; (2) Defendant became bound by Version 21 of X's Terms of Service or that xAI may enforce those terms as a third-party beneficiary; or (3) the forum-selection clauses encompass Defendant's claims in the New York Action.[19] The Court disagrees.

Under Texas law, a breach-of-contract claim requires: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant;

---

[17] *Id.* at 12.
[18] *Id.* at 15.
[19] Def.'s Mot. Dismiss 12–18, ECF No. 48.

and (4) damages sustained by plaintiff as a result of the breach." *Smith Int'l v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). At the pleading stage, however, Plaintiffs need only allege sufficient facts to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

First, Plaintiffs sufficiently allege the existence of a valid contract between Defendant and xAI. The First Amended Complaint alleges that Defendant created an xAI account on December 10, 2024, through a registration process that required users, including Defendant, to assent to xAI's Terms of Service.[20] Plaintiffs further allege that Defendant continued using xAI's services after creating her account, including as recently as January 2026.[21] Although Defendant contends that Plaintiffs fail to identify the precise steps she took during registration or attach the Terms of Service in effect at that time, Rule 8 does not impose such requirements. Accepting Plaintiffs' factual allegations as true, the Court finds that Plaintiffs have plausibly alleged Defendant's assent to xAI's Terms of Service.

Second, Plaintiffs sufficiently allege that Defendant assented to X's Terms of Service. Plaintiffs assert that Defendant received notice of Version 21 on December 16, 2025, clicked the accompanying "Got It" button, and continued accessing the X platform after the revised terms became effective on January 15, 2026.[22] Defendant argues that clicking the notification before the effective date could not constitute acceptance and that Plaintiffs' allegations of subsequent use are conclusory. But Plaintiffs expressly allege that Defendant accessed or used X after January 15, 2026, conduct that the Revised Terms of Service identify as constituting acceptance.[23] At this stage the Court must accept that factual allegation as true. *Sonnier*, 509 F.3d at 675. Accordingly,

---

[20] Pls.' Amend. Compl. ¶¶25–30, ECF No. 29.
[21] *Id*. at ¶33.
[22] *Id*. at ¶¶46–52.
[23] *Id*. at ¶¶50, 52.

Plaintiffs have plausibly alleged Defendant's assent to Version 21, irrespective of whether her earlier knowledge independently constituted acceptance.

Third, Defendant's argument that xAI cannot enforce X's forum-selection clause as a third-party beneficiary does not warrant dismissal. Plaintiffs allege that Version 21 expressly extends the forum-selection provision to third-party beneficiaries and that the xAI Plaintiffs qualify as such beneficiaries.[24] Although Defendant disputes whether the parties intended to include xAI within that provision, the absence of xAI's name from the Terms of Service does not, standing alone, establish that Plaintiff's interpretation is implausible. *Knox v. Ball*, 144 Tex. 402, 413, 191 S.W.2d 17, 23 (1945) (finding that "it is not necessary that the person to be benefited by the contract be named therein . . . ." (internal quotation omitted)). Whether Plaintiffs can ultimately establish their entitlement to enforce the provision is distinct from whether their allegations sufficiently state a claim for relief.

Fourth, Plaintiffs plausibly allege that Defendant's New York action falls within the scope of the forum-selection clauses. Defendant maintains that her claims arise independently of any contractual relationship because they concern xAI's alleged misconduct in generating sexually explicit images without her consent. But the forum-selection clauses are not expressly limited to contractual causes of action. Rather, they encompass disputes related to the services and content generated or disseminated through those services. The Fifth Circuit has instructed courts to examine the language of the agreement to determine which causes of action fall within a forum-selection clause. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007). Moreover, forum-selection clauses may encompass noncontractual claims depending on their language and the relationship between the claims and the agreement. *See Pinto Tech.*

[24] *Id*. at ¶76.

*Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437–40 (Tex. 2017). Here, Plaintiffs allege that Defendant's New York action concerns content generated by Grok and disseminated through the X platform. Given the clauses' express references to disputes concerning content and others' use of the services, Plaintiffs have plausibly alleged that Defendant's claims fall within their scope. Defendant's contention that her claims arise under independent statutory and common-law duties does not, by itself, place those claims outside the contractual provisions.[25]

Lastly, Plaintiffs adequately allege the remaining elements of their breach-of-contract claims. Plaintiffs assert that they performed their contractual obligations by providing Defendant access to their respective services, that Defendant breached the forum-selection clauses by initiating litigation in New York and that Plaintiffs incurred damages, including attorneys' fees and expenses associated with defending that litigation and seeking enforcement of the clauses.[26] Whether those expenditures individually constitute recoverable damages for breach of a forum-selection clause presents a separate question from whether Plaintiffs have plausibly alleged an injury from the purported breach. *Wang v. Whittenburg*, 735 S.W.3d 710, 713–14 (Tex. 2026). At this stage, the Court finds that Plaintiffs have sufficiently pleaded the elements of their breach-of-contract claims.

Accordingly, accepting Plaintiffs' well-pleaded allegations as true and drawing all reasonable inferences in their favor, the Court concludes that Plaintiffs have stated plausible claims for relief. Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is therefore **DENIED**.

**D. Discretionary Jurisdiction over a Declaratory Judgment Action**

Defendant argues that the Court should decline to exercise jurisdiction over Plaintiffs' declaratory judgment claims because the same contractual issues are being litigated in the Southern

---

[25] Def.'s Mot. Dismiss 18, ECF No. 48.
[26] Pls.' Amend. Compl. ¶¶ 7, 33, 52, 66, ECF No. 29.

District of New York and the Second Circuit.[27] Specifically, Defendant contends that allowing this action to proceed would risk inconsistent rulings, undermine judicial economy, and reward Plaintiffs' alleged forum shopping.[28] Plaintiffs respond that they brought this action in the forum expressly designated by the parties' agreements and that Defendant cannot invoke forum-shopping concerns to avoid the very forum-selection clauses she allegedly breached.[29] The Court agrees with Plaintiffs.

Applying the *Trejo* factors, the Court finds that exercising jurisdiction over Plaintiffs' declaratory judgment claims is appropriate. First, as Defendant acknowledges, "there is no parallel state court proceeding" in which the parties' dispute may be fully litigated.[30] The federalism concerns underlying the first and seventh factors are absent. *See Sherwin-Williams v. Holmes Cnty.*, 343 F.3d 383, 392 (5th Cir. 2003).

Second, the Court is unpersuaded by Defendant's characterization of this action as improper anticipatory litigation or forum shopping. Although Plaintiff's filed this action after receiving notice of Defendant's intent to pursue litigation in New York, the Fifth Circuit has recognized that "[f]ederal declaratory judgment suits are routinely filed in anticipation of other litigation" and that such filing is not inherently improper. *Id.* at 391. More importantly, Plaintiffs did not select this forum arbitrarily. Rather, they filed suit in the forum expressly identified in the parties' purported agreements. Defendant argues that Plaintiffs brought this action to "obtain a preferred forum for litigating defenses to the New York Action."[31] But selecting a preferred forum is precisely the purpose of a forum-selection clause. *M/S Bremen v. Zapata Off-Shore Co.*, 407

---

[27] Def.'s Mot. Dismiss 20, ECF No. 48.
[28] *Id.* at 21.
[29] Pls.' Resp. 24–25, ECF No. 54.
[30] Def.'s Mot. Dismiss 19, ECF No. 48.
[31] *Id.* at 20.

U.S. 1, n.15 (1972) (noting that a forum selection clause "was an effort to eliminate all uncertainty as to the nature, location, and outlook of the forum"). Defendant cannot transform Plaintiff's attempt to enforce the contractual selection into evidence of improper forum shopping merely by filing suit elsewhere. Nor does the Court need to assume the ultimate enforceability of the disputed clauses to recognize that Plaintiffs have asserted a contractual basis for litigating here. Accordingly, the second, third, and fourth *Trejo* factors do not favor dismissal.

Third, while the Court acknowledges Defendant's concerns regarding judicial economy and inconsistent rulings, the existence of parallel litigation does not alone warrant dismissal. Because Plaintiffs also assert independent breach-of-contract claims, dismissing their declaratory judgement claims would not eliminate the need to consider the parties' contractual obligations. Accordingly, the fifth and sixth *Trejo* factors do not favor dismissal.

Finally, Defendant argues that Plaintiff's declaratory judgment claims must be dismissed if their underlying breach-of-contract claims fail. But because the Court has determined that Plaintiffs' breach-of-contract claims survive dismissal, Defendant's argument provides no basis for declining declaratory relief at this stage. Considering the *Trejo* factors in totality, the Court finds that dismissal of Plaintiffs' declaratory judgment claims is unwarranted. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss as to the declaratory judgment.

## IV. CONCLUSION

For the forgoing reasons, the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 48).

**SO ORDERED** on this **20th day** of **October, 2026.**

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE